834 A.2d 505

Gerald CRISWELL, II, and Tracey Criswell, et ux., Appellants,

v.

David S. KING, Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 3, 2002.

Decided Oct. 21, 2003.

36

Daniel Silver, for Gerald and Tracy Criswell.

George C. Werner, Lancaster, for David S. King.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *OPINION*

Justice CASTILLE.

The issue on this appeal is whether in order to preserve a claim that a jury verdict is contrary to the weight of the evidence, a party must raise an objection to that verdict prior to the jury's discharge. We hold that a weight of the evidence challenge need not be proffered before discharge of the jury in order to preserve the challenge for post-verdict and appellate review. Accordingly, we reverse the order of the Superior Court and remand this case for that court to consider the merits of appellee's appeal.

This case arises from an October 12, 1993, automobile accident in which appellee David S. King's vehicle struck appellant Gerald Criswell's vehicle from behind. Appellee testified that he had looked down to adjust the heater of his automobile and, by the time he looked up, it was too late to avoid hitting appellant. Appellant managed to drive his vehicle to a nearby garage, and his mother then drove him to the emergency room where he was diagnosed with a muscle strain and released the same day. On September 29, 1995, appellant filed a complaint in negligence against appellee, seeking damages for alleged injuries sustained as a result of the accident.

At the ensuing one-day jury trial, appellant's evidence consisted of his own testimony and the videotaped deposition of an expert medical witness. After describing the accident, appellant recounted the headaches and neck pain he had experienced in the ensuing months and years. Appellant also described the medical treatment he received, including corrective surgery he underwent on September 17, 1998, nearly five years after the accident. Appellant claimed that, despite these treatments and the passage of time, his pain had not significantly subsided. Appellant's expert witness, Dr. Hani Tuffaha, a neurosurgeon who had examined him for the first time on June 24, 1998, testified that appellant had a herniated disc and that he had performed corrective surgery after determining that previous non-surgical treatments had been unsuccessful. Dr. Tuffaha further testified, to a reasonable degree of medical certainty, that appellant's herniated disc and the subsequent surgery were the direct results of the 1993 automobile accident.

Appellee's evidence consisted of his own testimony and the videotaped deposition of his expert witness. Appellee did not challenge appellant's version of the accident, but questioned its severity and the extent of appellant's injuries attributable to the accident. Appellee emphasized that the surgery Dr. Tuffaha performed on appellant occurred almost five years after the accident. Appellee's medical expert, Dr. Paul S. Lin, an orthopedic surgeon, testified that he had examined appellant on April 14, 1999. Dr. Lin stated that a review of appellant's medical records revealed no history of neck problems before the accident and that appellant stated that he had no neck pain prior to the accident. Based upon his assumption that appellant truthfully relayed the onset and nature of his symptoms, Dr. Lin noted that he had assumed that appellant's herniated disc resulted from the automobile accident.

Prior to commencing deliberations, the jury was presented with a verdict slip containing the following three interrogatories: (1) whether appellee was negligent; (2) whether appellee's negligence was a substantial factor in bringing about

appellant's harm; and (3) the amount of damages, if any, sustained by appellant as a result of the collision. Neither party objected to the content or phrasing of the interrogatories. Forty-five minutes after deliberations began, the jury returned with a verdict. In response to the negligence interrogatory, the jury answered "Yes." In response to the causation interrogatory, the jury answered "No." Accordingly, the jury did not answer the damages interrogatory.

After hearing the adverse verdict, appellant's counsel declined the trial court's invitation to poll the jury, stating, "I guess there's no need, Judge." The jury was then discharged. Appellant subsequently moved for a new trial, and also alleged that the trial court had erred in failing to enter a directed verdict in his favor. On October 22, 1999, one week after the verdict, appellant filed a timely motion for post-trial relief, which included a request for a new trial based on the jury's verdict being against the weight of the evidence. Appellee did not file a written response but did oppose the motions in oral argument.

On February 1, 2000, the trial court granted a new trial on weight of the evidence grounds. In its subsequent opinion, the trial court noted that appellee had "more or less conceded his negligence" and the issue of causation "was so apparent that most of the expert testimony was concerned with the nature and extent of [appellant's] injuries and whether [appellant] had fully recovered rather than the underlying cause of these injuries." Because the evidence should have led to a jury finding that appellee's negligence had caused appellant damage, the trial court concluded that "the jury's verdict on the causation issue was so contrary to the weight of the evidence as to shock one's sense of justice," thus warranting a grant of a new trial. Slip op. at 2–4.

Appellee appealed to the Superior Court, alleging that appellant had "waived any right to a new trial by failing to object to the allegedly inconsistent verdict before the jury was dismissed," and that, in any event, the court abused its discretion in granting a new trial on weight of the evidence grounds. The Superior Court, 776 A.2d 298, reversed, finding

that appellant had waived his weight challenge by failing to object after the jury returned the verdict and before discharge of the jury. In so holding, the panel majority relied upon *Picca v. Kriner,* 435 Pa.Super. 297, 645 A.2d 868 (1994), *alloc. denied,* 539 Pa. 653, 651 A.2d 540 (1994), which held that a plaintiff who fails to object to an ambiguous or flawed jury verdict (as reflected in special interrogatories) before the jury is dismissed waives the right to challenge the verdict in post-trial motions. The panel majority concluded that the causation interrogatory in this matter was identical to the interrogatory at issue in *Picca* and that the *Picca* panel had found that this circumstance rendered the jury's verdict ambiguous:

> [A]s in *Picca,* the jury herein could have found that [appellee] caused no injury (which would have been incredible based on the evidence presented) or that the injury suffered was not "substantial," which resulted in an ambiguous verdict. In either event, the jury's finding was inconsistent with the undisputed testimony that [appellant] suffered some injury.

Slip op. at 9. In the panel majority's view, if appellant had objected before the jury was discharged, the trial court could have instructed the jury to clarify its ambiguous verdict. *Id.* at 8, *quoting Fillmore v. Hill,* 445 Pa.Super. 324, 665 A.2d 514, 518 (1995). The Superior Court further concluded that the jury's verdict must be reinstated because, by failing to object to the ambiguous verdict prior to the discharge of the jury, appellant waived his right to challenge the verdict in post-trial motions. *Id.* at 9.

In a concurring opinion, Judge Musmanno explained that he was constrained to join the majority because *Picca* was binding. Judge Musmanno noted, however, that the verdicts in both this case and *Picca* were not "inconsistent in the traditional sense" because "[a] verdict that finds negligence but no substantial factor is not an inconsistent verdict." Accordingly, Judge Musmanno opined that *Picca* should be re-examined.

This Court granted appellant's petition for allowance of appeal to determine whether the Superior Court was correct in holding that a party must object to the verdict prior to the

discharge of the jury in order to preserve a claim that the verdict was contrary to the weight of the evidence. The issue is one of importance because the Superior Court and the Commonwealth Court have struggled with the holding in *Picca*, issuing several opinions which either limit or arguably contradict that holding and which, in turn, call into question the propriety of the panel decision in this case, which hewed to *Picca* despite contrary intervening authority. As the question before us is one of law, our review is plenary. *Phillips v. A-Best Products Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

Appellant notes that the Superior Court decision in *Picca* is built upon this Court's decision in *Philadelphia Police Dept. v. Gray*, 534 Pa. 467, 633 A.2d 1090 (1993). In *Gray*, this Court held that, when a party seeks to challenge a jury verdict on grounds that the jury returned inconsistent answers to interrogatories, an objection to the inconsistency must be raised when the verdict is rendered. In so holding, *Gray* relied upon this Court's landmark issue preservation decision in *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974), which abrogated the basic and fundamental error doctrine and required parties to preserve issues for appeal by making contemporaneous objections at trial. Citing to Judge Musmanno's concurrence below, appellant notes that the verdict in this case—finding appellee negligent but finding that the negligence was not a substantial factor in causing appellant's harm—is not inconsistent, but merely "disappointing and troublesome." Correspondingly, appellant notes, verdict inconsistency was not the basis for his weight of the evidence challenge; rather, appellant's argument was that the jury's finding that appellee's negligence was not a substantial factor in causing his injuries was contrary to the testimony of both medical experts, who opined that the accident did cause appellant's neck injuries. Because verdict inconsistency was not the basis for his post-verdict challenge, appellant argues, the Superior Court was wrong to apply *Gray's* waiver rule to him.

Appellee counters by noting that *Gray* extended the *Dilliplaine* waiver doctrine to encompass claims premised upon inconsistent jury verdicts, and that the Superior Court "wisely

extended" *Dilliplaine/Gray* waivers to circumstances where a jury verdict is ambiguous (as revealed in interrogatories). Appellee does not dispute that a jury verdict finding that appellant had suffered no harm at all would be contrary to the weight of the evidence. But appellee argues that the jury's verdict on causation in this case was ambiguous. This is so because, although appellant testified to the injuries and medical treatment he received in the two months immediately following the accident, he introduced no medical testimony concerning that treatment, but instead primarily focused his evidence of "harm" on the diagnosis of a cervical disc herniation and corrective surgery which occurred nearly five years after the car accident and after a substantial gap in medical treatment. Appellee notes that he contested the causal link between the accident and the later-claimed diagnosis and surgery. Given this evidentiary background, appellee submits that the jury may well have assumed that the "overly broad" causation interrogatory was asking it only to determine whether appellee's negligence was a substantial factor in bringing about the latter harm. Since it is not apparent which "harm" the jury was referring to in its verdict on causation, appellee submits, the verdict was ambiguous. Appellee argues that appellant was required to object to the verdict when rendered so that the trial court could attempt to resolve the ambiguity by resubmitting the matter to the jury. In appellee's view, such a requirement would forward the salutary function of the general *Dilliplaine* rule, which is to allow for the correction of errors in the trial court, thereby eliminating avoidable appeals.

In *Dilliplaine,* this Court articulated the policy considerations underlying the requirement of contemporaneous objections, explaining that timely and specific objections advance judicial economy by allowing a trial court to immediately address errors which are subject to correction before the trial ends:

> This opportunity to correct alleged errors at trial advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time

and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both the litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of issues properly preserved for appeal. Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions.

*Id.* at 116–17. *See also Jackson v. Phillips*, 502 Pa. 326, 466 A.2d 130 (1983) (motion for new trial on ground that molded verdict was inconsistent with findings of jury not preserved for appellate review where no objection made at trial); *Tagnani v. Lew*, 493 Pa. 371, 426 A.2d 595 (1981) (*Dilliplaine* precludes court from granting relief on post-verdict motions when same relief has not been requested at trial). Our Rules now specifically embrace this general requirement. *See* Pa. R.C.P. 227.1(b)(1); Pa.R.A.P 302(a).

*Gray* indeed applied the *Dilliplaine* contemporaneous objection requirement to circumstances where the post-trial complaint involves an allegation that the jury returned inconsistent answers to interrogatories.[1] *Picca* then expanded upon *Gray*. The defendant in *Picca* conceded that he was at fault in the underlying automobile accident, and also acknowledged that the plaintiff suffered some minor injury from the accident. Based upon this concession, the trial court directed

---

1. A majority of federal circuits that have considered the issue have adopted a similar rule with respect to claims of inconsistency in the jury verdict. *See, e.g., Jarvis v. Ford Motor Co.*, 283 F.3d 33 (2d Cir.2002); *Williams v. KETV Television, Inc.*, 26 F.3d 1439 (8th Cir. 1994); *Resolution Trust Corp. v. Stone*, 998 F.2d 1534 (10th Cir.1993); *White v. Celotex Corp.*, 878 F.2d 144 (4th Cir.1989); *Strauss v. Stratojac Corp.*, 810 F.2d 679 (7th Cir.1987); *Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd.*, 791 F.2d 1416 (10th Cir.1986); *Fernandez v. Chardon*, 681 F.2d 42 (1st Cir.1982); *Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529 (5th Cir.1974).

the jury to find the defendant negligent. But the jury found that the defendant's negligence was not a substantial factor in causing the plaintiff's injuries. The plaintiff did not object to the jury's verdict before it was discharged, but later filed post-trial motions and the trial court granted a new trial on the basis that the verdict was against the weight of the evidence. The Superior Court reversed, concluding that the *Gray/Dilliplaine* requirement of contemporaneous objection should apply whenever the jury returns a verdict that is "irrational, incredible, or otherwise problematic." *Picca*, 645 A.2d at 871. The court justified this broad holding by noting that it would serve *Dilliplaine's* stated goal of correcting errors as they occurred at trial, and thereby avoiding unnecessary appeals:

> After the jury returned its verdict, [plaintiff] . . . could have objected so the court could determine whether the jury was incredibly finding that [defendant] caused no injury at all, or whether the jury considered [defendant's] contribution to [plaintiff's] ailments insubstantial. If the latter were the case, the court could have then instructed the jury to find [defendant] liable for so much of [plaintiff's] injuries as he actually caused, and avoided any need for a new trial.

*Id.* (citation and footnote omitted). The court concluded that the plaintiff had waived her claim by failing to object to the verdict while the trial court could still instruct the jury to resolve the ambiguity—*i.e.*, before the jury was dismissed. *Id.* at 872.[2]

---

**2.** We note that *Picca* overstates the holding in *Gray*. *Gray* does not hold, as *Picca* suggests, that a party's failure to object to an inconsistent verdict before the jury is dismissed "waive[s] **any** right to a new trial." *See Picca*, 645 A.2d at 871 (emphasis added). Indeed, *Gray* did not even reach the issue of whether the verdict there was inconsistent. Rather, *Gray* simply held that a party's failure to object to a jury's allegedly inconsistent verdict before the jury is dismissed waives **that** particular issue. *Gray*, 633 A.2d at 1095 ("Because [the inconsistent verdict] issue was not preserved at trial, we must find that it was waived."). *Picca* is not the only Superior Court decision to overstate *Gray's* holding. In *Fillmore v. Hill*, 445 Pa.Super. 324, 665 A.2d 514, 517 (1995), for instance, the Superior Court cites *Gray* for the proposition that the "failure to object to [an] obviously inconsistent verdict will waive [the] right to request [a] new trial in post-trial motions." *Gray* speaks to waivers of issues and not waivers of rights to certain types of relief.

44

In subsequent decisions, the Superior Court purported to narrow the broad rule of objection/waiver announced in *Picca.* *See, e.g., King v. Pulaski,* 710 A.2d 1200, 1204 (Pa.Super.1998) ("The [*Picca*] waiver rule should not be applied to cases in which the verdict is clear and unambiguous, albeit problematic, troublesome or disappointing."). *See also Burnhauser v. Bumberger,* 745 A.2d 1256 (Pa.Super.2000) (*Picca* waiver rule inapplicable where party's objection would not have eliminated need for new trial); *Fillmore v. Hill,* 445 Pa.Super. 324, 665 A.2d 514 (1995) (same); *Henery v. Shadle,* 443 Pa.Super. 331, 661 A.2d 439 (1995) (*Picca* waiver rule is more prudently restricted to verdicts of obvious inconsistency and clear, certain irrationality). Indeed, in the only reported opinion in which the Superior Court has explicitly followed *Picca,* the court interpreted *Picca* to mean only that a "failure to object to an ambiguous or flawed jury verdict prior to the dismissal of the jury will result in the waiver of **that claim** on appeal." *Holliday v. Page,* 440 Pa.Super. 490, 656 A.2d 136, 138 (1995) (emphasis added). Notably, the claim in *Holliday* was not a weight of the evidence claim, but rather a claim arising from the very manner in which the verdict was announced, *i.e.,* the appellant belatedly claimed that the verdict was tainted because of certain statements made by one of the jurors as the jury was being polled.

Consistently with its generally narrowing interpretation of *Picca,* the Superior Court has held that a post-trial motion alone is sufficient to preserve a claim that the verdict is against the weight of the evidence where the verdict is not inconsistent or ambiguous and/or where an objection and instruction to the jury would not have eliminated the need for a new trial. *E.g. Hobbs v. Ryce,* 769 A.2d 469, 473 n. 3 (Pa.Super.2001); *King,* 710 A.2d at 1204; *Lewis v. Evans,* 456 Pa.Super. 285, 690 A.2d 291 (1997); *Fillmore, supra; Henery,* 661 A.2d at 442. Thus, in *Rozanc v. Urbany,* 444 Pa.Super. 645, 664 A.2d 619 (1995), the court concluded that the *Picca* waiver rule is inapplicable where the post-trial claim is not that the jury verdict was ambiguous or flawed, but rather, that it was "contrary to the evidence admitted at trial." 444

Pa.Super. 652, 664 A.2d 622. There, the jury was given a causation interrogatory virtually identical to the one at issue in *Picca* and the case *sub judice.* As in *Picca* and this case, the jury found that the defendant was negligent, but that her negligence was not a substantial factor in bringing about the plaintiff's harm. *Id.* Because it was clear that the jury's answer to this unambiguous interrogatory was contrary to the evidence introduced at trial, the Superior Court concluded that it was appropriate for the trial court to award a new trial. Questioning the relevance of *Picca* in this circumstance, the panel reasoned that "[w]aiver is not a bar to such an award because the objection in this case is not to the wording of the interrogatory or to an inconsistent result reached by the jury following the answering of the interrogatories. The question is simply whether the jury's verdict was so contrary to the evidence as to 'shock our conscience.' " *Id.* (citation omitted).[3] The Superior Court has explained this recognition that the *Picca* waiver rule should not apply to claims sounding in the weight of the evidence by noting that an objection at trial would not eliminate the need for a new trial if the weight claim were deemed meritorious. *See Burnhauser,* 745 A.2d at 1259. This is so because a trial judge cannot issue a corrective instruction to the jury suggesting that the weight of the evidence does not support its verdict without invading the province of the jury by essentially directing a verdict. *See id.* *Accord Hobbs, supra; Fillmore,* 665 A.2d at 519.

In holding that appellant had waived his weight claim in the case *sub judice,* the panel below cited to *Picca* without acknowledging the refinement in the post-*Picca* decisions, and particularly the cases specifically involving weight of the evidence claims. For the reasons that follow, we agree with those post-*Picca* decisions which recognize that a claim challenging the weight of the evidence is not the type of claim that must be raised before the jury is discharged. Rather, it

**3.** The Commonwealth Court has also read *Picca* as inapplicable where a party claims that a jury verdict is against the weight of the evidence. *See Cipolone v. Port Authority Transit System of Allegheny County,* 667 A.2d 474 (Pa.Cmwlth.1995).

46

is a claim which, by definition, ripens only after the verdict, and it is properly preserved so long as it is raised in timely post-verdict motions.

█ The approach of *Picca*, the panel below, and appellee here have lost sight of the very nature of a claim challenging the weight of the evidence. A weight challenge is *sui generis*. Such a claim is not premised upon trial court error or some discrete and correctable event at trial, but instead ripens only after, and because of, the jury's ultimate verdict in the case. The challenge does not dispute the power of the jury to render the verdict it rendered, nor does it even allege any facial error in the verdict of the jury (be it, in the eyes of the challenger, a flaw, an inconsistency or a total injustice). Assuming that the case properly was ripe for jury consideration—*i.e.*, neither of the parties was entitled to a directed verdict because a properly joined issue of material fact remained for resolution—the jury is fully empowered to rule in favor of either or any party. The basis for a weight claim derives from the fact that the trial court, like the jury, had an opportunity to hear the evidence and observe the demeanor of the witnesses; the hope and expectation animating a weight challenge is that the trial court will conclude that the verdict was so contrary to what it heard and observed that it will deem the jury's verdict such a miscarriage of justice as to trigger the courts time-honored and inherent power to take corrective action.

█ Given the primary role of the jury in determining questions of credibility and evidentiary weight, this settled but extraordinary power vested in trial judges to upset a jury verdict on grounds of evidentiary weight is very narrowly circumscribed. A new trial is warranted on weight of the evidence grounds only "in truly extraordinary circumstances, *i.e.*, when the jury's verdict is '*so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.*' " *Armbruster v. Horowitz*, 572 Pa. 1, 813 A.2d 698, 703 (2002) (emphasis original) (quoting *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177, 1189 (1994)). This Court

has also noted that one of the reasons that the power and duty to upset a verdict on weight grounds is so narrowly circumscribed is because of the obvious tension between the broad, settled, exclusive role of the fact-finder in assessing credibility and the limited power of trial judges, in narrowly circumscribed circumstances, to overturn those assessments when the judicial conscience is not merely disappointed, or uncomfortable, but shocked. Id. at 704.

As these observations should make clear, the only trial entity capable of vindicating a claim that the jury's verdict was contrary to the weight of the evidence claim is the trial judge—decidedly not the jury. *Brown, supra* (A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court.). It is one thing to tell the jury to resume deliberations because its verdict is inconsistent, but it is quite another to direct it to resume deliberations because, in the courts view, the verdict rendered so far departs from the evidence as to shock the judicial conscience. Indeed, as the Superior Court has noted (in cases not discussed by the panel in the case *sub judice*) an order to resume deliberations based on a weight of the evidence instruction would intrude upon the province of the jury. *Burnhauser, supra; Hobbs* 769 A.2d at 473 n. 3; *Fillmore, supra. Accord Howard Express Co. v. Wile,* 64 Pa. 201, 205 (1870) ("[W]here there is any evidence which alone would justify an inference of the disputed fact, it must go to the jury, no matter how strong or persuasive may be the countervailing proof."). Assuming, as we must, that the evidence was sufficient to warrant submitting the case to the jury in the first instance, it would be improper to essentially eviscerate the jury's role by ordering it to weigh the evidence differently.

We reaffirm that which was recognized in *Gray: i.e.,* that an inconsistent verdict provides grounds for objection and, if a party seeks relief upon grounds of verdict inconsistency, it must forward a timely, contemporaneous objection upon the rendering of the verdict. But a claim of verdict inconsistency is not the same complaint as a claim sounding in

evidentiary weight. A verdict may be perfectly consistent and yet be a shock to the losing party, as well as a shock to the conscience of the jurist who oversaw the presentation of evidence. Verdict-related claims arising from perceived evidentiary weight cannot be addressed and averted by resubmission to the same jury. Since the complaint cannot be redressed by the jury, there is no reason, under the principles animating *Dilliplaine* and its progeny, to require an objection before the jury is discharged. Nor should a party be forced to litigate a claim of verdict inconsistency when in fact its true complaint sounds in evidentiary weight.

In seeking weight of the evidence relief, appellant in the case *sub judice* did not allege that the jury's verdict was inconsistent or ambiguous. Instead, appellant filed a timely post-verdict motion in which he requested that the trial court set aside the jury verdict based upon its own assessment of the weight of the evidence, and under the settled standard. Since this request was, by definition, one which ripens only at the post-verdict stage, we hold that it was properly forwarded for the first time in a timely-filed post-trial motion. *See* Pa. R.C.P. 227.1(b).[4]

For the foregoing reasons, we reverse the order of the Superior Court and we remand the matter to that court for consideration of the merits of appellee's appeal.

Former Chief Justice ZAPPALA did not participate in the decision of this case.

---

4. The note to Rule 227.1(b)(1) recognizes that "[i]f no objection is made, **error which could have been corrected** in pre-trial proceedings or during trial by timely objection may not constitute a ground for post-trial relief." (emphasis added).