# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Steven Chin | : | |
| | : | |
| v. | : | No. 1896 C.D. 2016 |
| | : | Argued: May 1, 2017 |
| New Flyer of America, Inc. and | : | |
| Southeastern Pennsylvania | : | |
| Transportation Authority | : | |
| | : | |
| Appeal of: New Flyer of America, Inc. | : | |


**BEFORE:**     **HONORABLE MARY HANNAH LEAVITT,** President Judge
                       **HONORABLE RENÉE COHN JUBELIRER,** Judge
                       **HONORABLE MICHAEL H. WOJCIK,** Judge


**OPINION BY**
**JUDGE COHN JUBELIRER**                 **FILED: August 24, 2017**

New Flyer of America, Inc. (New Flyer) appeals from a May 12, 2016 Order of the Court of Common Pleas of Philadelphia County (trial court), entering judgment in favor of Plaintiff Steven Chin (Chin) following a six-day jury trial for personal injuries Chin suffered when he was struck by a bus owned and operated by Southeastern Pennsylvania Transportation Authority (SEPTA) while crossing a crosswalk.[1] New Flyer manufactured the bus, which Chin alleged was negligently and defectively designed. The jury found in favor of New Flyer on the product

---

[1] New Flyer originally appealed the Order to the Pennsylvania Superior Court because SEPTA was no longer a party to the action, having settled prior to trial. However, the Superior Court subsequently transferred the appeal to this Court because SEPTA, a Commonwealth agency, was named as a defendant. We acknowledged jurisdiction over the appeal on November 22, 2016.

liability/defective design claim but against it on the negligence count. It returned an award of $5 million in non-economic damages and apportioned liability as 25 percent for New Flyer and 75 percent for SEPTA. Following trial, New Flyer filed a Motion for Post-Trial Relief (Post-Trial Motion), seeking judgment notwithstanding the verdict (judgment n.o.v.), a new trial on the merits and/or on damages, or remittitur. Following briefing and argument, the trial court issued its May 12, 2016 Order, denying the Post-Trial Motion and entering judgment on the jury award, along with delay damages. This appeal followed.

On appeal, New Flyer raises several issues, which we have reordered to address those that are potentially dispositive first: (1) whether the verdict is irreconcilably inconsistent when the jury found there was no product defect but still found New Flyer negligent; (2) whether the jury's verdict is against the weight of the evidence or not supported by sufficient evidence; (3) whether the trial court erred in refusing to charge the jury on the sophisticated user and sophisticated purchaser doctrines; and (4) whether the trial court erred in refusing to grant a new trial as to damages or remittitur based upon an excessive award. We address those issues seriatim, but first, to understand the issues in this case, we must review the facts that give rise to this accident.

## I.     Factual Background

On September 5, 2012, Chin was walking west along Arch Street, near the intersection with Sixth Street in Philadelphia, on his way to work. At the same time, a bus operated by SEPTA was also traveling west on Arch Street and stopped at a traffic light at the same intersection. After the signal changed, the bus proceeded to make a left turn onto Sixth Street, where it struck Chin, who was approximately halfway across the crosswalk at the time.

2

Chin, who was 25 years old at the time of the accident, suffered a degloving injury, which occurs when the skin and soft tissue are torn from the bone, to his right foot and ankle. He was initially denied pain medication because it would interfere with efforts to determine the extent of his nerve damage in his right foot and ankle. Because of the soft tissue injury, doctors could not use internal screws or pins to stabilize the multiple fractures in the foot and ankle; instead, they were stabilized using an external fixator system, which is screwed through the skin and into the bone. Chin testified that he was hospitalized for approximately one month before he was released home, where he was bedridden because of the external fixator, which was not removed until January 2013. After several months of physical therapy, Chin is able to walk, but his right ankle is stuck in a downward pointed position with very limited motion, affecting his gait. His doctors testified that the injury is permanent, and his abnormal gait is impacting his knee, hip, and back; they have not ruled out the need for future surgery. Since his injury, Chin has not been able to return to running, a sport he once enjoyed.

At trial, the driver of the bus testified that he saw three other individuals waiting at the corner but did not see Chin because the driver's side mirror, also known as the roadside mirror, obstructed his view during left-hand turns. New Flyer designed and manufactured the buses. SEPTA provided technical specifications, which were developed by its engineering group. The technical specifications called for use of an 8" x 15" Rosco brand mirror on the driver's side but did not specify the height to mount it, stating only that it should be positioned "to minimize blind spots for the operator in front of mirrors." (R.R. at 132a, 456a-57a.) On the other hand, the specifications were specific as to the height of a curbside mirror, which is located on the right side of the bus. When New Flyer

3

was unable to build the buses to meet the specification for the curbside mirror, it contacted SEPTA and sought a change to the height specifications. At no time did New Flyer request a change related to the driver's side mirror or advise SEPTA that the Rosco mirror should not be used.

A design engineer at New Flyer testified that the driver's side mirror on SEPTA buses is mounted at 46 inches high whereas driver's side mirrors on buses for other transportation authorities are typically mounted between 40 to 41 inches high. In a subsequent build cycle, New Flyer lowered the mount of the driver's side mirror by five to six inches on the SEPTA buses. When SEPTA contacted New Flyer about the change, New Flyer retrofitted the buses with a new arm, which raised the height of the mount back to 46 inches. The design engineer was not aware of any other customer using a 46-inch mount, which is the highest mount he was aware of, but the mirror does not violate any laws or regulations. He explained that the mirror causes an 8-inch obstruction, and the A-post, which is the post at the end of the windshield, causes another 4-inch obstruction. No matter what height the mirror is mounted, New Flyer representatives said an obstruction would result because visual obstructions are inherent in mirrors.

After an increase in pedestrian accidents where drivers raised concerns about sight lines related to the mirrors, SEPTA conducted various line of vision checks. Two were internally conducted in 2004 and 2012, respectively, both of which acknowledged a temporary obstruction but nonetheless determined the allegation of an engineering flaw in the New Flyer bus was unfounded. SEPTA also contracted with a third party, STV, to evaluate the driver's side mirror in 2013. The STV report states that the mirrors are located higher than the normal mount and that the Rosco mirror is taller than most bus mirrors. The STV report states

4

that reducing the height of the top of the mirror by 4 inches would provide an additional 17 feet of visibility. STV recommended that SEPTA consider, *inter alia*, lowering or reducing the size of the driver's side mirror in the future. In 2015, SEPTA voluntarily retrofitted its entire fleet with a smaller mirror at its own cost.

To help combat the visual obstruction caused by the driver's side mirrors, SEPTA developed a pedestrian awareness program to train drivers to utilize multiple techniques to mitigate it. These techniques include: waiting four seconds after a signal changes before beginning a turn as the delay would allow any pedestrians to clear the obstruction; squaring off turns, meaning drivers pull straight ahead into the intersection prior to commencing the turn, such that any pedestrians would be visible through the side window; and "rocking and rolling," a technique whereby the driver would rock back and forth and from side to side in their seat to see around the mirror. The driver here, a 28-year veteran of SEPTA, testified he did use these techniques.

Over the years, the union representing SEPTA drivers raised the issue of visual obstructions because of the mirrors in defending drivers involved in left-hand turn accidents.[2] Following two fatal pedestrian accidents in 2006, SEPTA contacted a representative at New Flyer, requesting that he provide testimony at arbitration hearings for the drivers involved in those accidents. The representative was advised by in-house counsel and outside counsel for New Flyer to not provide testimony regarding the mirrors because they were concerned about potential exposure to litigation.

---

[2] In 2011, there were four left-hand turn accidents, three in 2012, and five in 2013, one of which was fatal. SEPTA drivers make approximately 100,000 left-hand turns per day.

## II.     Inconsistent Verdict

New Flyer first argues that the jury's finding that it was negligent is inconsistent with its finding that there was no product defect. In its Rule 1925(a) Opinion,[3] the trial court stated the issue was waived because, *inter alia*, New Flyer did not object to the verdict slip or object at the time the verdict was rendered.[4] (Trial Ct. Op. at 13.) New Flyer responds that it was not required to object to the verdict slip because it did not **compel** an inconsistent verdict and that objection at the time the verdict was rendered would not have eliminated the need for a new trial because the jury could not cure the defect without the trial court essentially instructing the jury to change its verdict, which is not permitted. New Flyer argues there was nothing further the trial court could do, as it had already re-instructed the jury on the definition of product defects after the jury asked for clarification, and the jury was polled, which confirmed the verdict was what the jury intended.

Under Rule 227.1(b)(1) of the Pennsylvania Rules of Civil Procedure, generally, to be entitled to post-trial relief, a party must make a timely objection at the time of trial. *See* Pa. R.C.P. No. 227.1(b)(1) ("[P]ost-trial relief may not be granted unless the grounds therefor . . . were raised . . . by objection . . . or other appropriate method at trial."). Our Supreme Court first explained the rationale

---

[3] Rule 1925(a)(1) of the Pennsylvania Rules of Appellate Procedure provides that:

> [U]pon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

Pa. R.A.P. 1925(a)(1).

[4] The issue of waiver is a question of law as to which the standard of review is *de novo* and the scope of review is plenary. *Straub v. Cherne Indus.*, 880 A.2d 561, 566 n.7 (Pa. 2005).

6

behind requiring contemporaneous objections in *Dilliplaine v. Lehigh Valley Trust Company*:

> This opportunity to correct alleged errors at trial advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both the litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal. Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions.

322 A.2d 114, 116-17 (Pa. 1974) (footnotes omitted).

Since that time, our Supreme Court has specifically addressed when a contemporaneous objection to a jury verdict is required. In *City of Philadelphia v. Gray*, 633 A.2d 1090 (Pa. 1993), despite finding a SEPTA driver was negligent but not a substantial factor in plaintiff's injuries, a jury still apportioned 25 percent causal negligence to SEPTA. On appeal, the Supreme Court found that an objection was not required to the interrogatories themselves because "the questions posed to the jury did not call for inconsistent answers"; instead, an objection "would only arise when inconsistent answers were given." *Id.* at 1095. The failure to object to the inconsistency **at the time the verdict was rendered**, however, resulted in the issue being waived. *Id.*

Ten years later, the Supreme Court addressed whether a contemporaneous objection must be lodged when challenging the weight of the evidence. In those circumstances, the Court found an objection did **not** need to be raised prior to the

7

jury's discharge. *Criswell v. King*, 834 A.2d 505, 511-12 (Pa. 2003). "Rather, it is a claim which, by definition, ripens only after the verdict, and is properly preserved so long as it is raised in timely post-verdict motions." *Id.* at 512. The Court in *Criswell* specifically reaffirmed the holding in *Gray* that a party seeking relief on the grounds of an **inconsistent** verdict must lodge a timely, contemporaneous objection at the time the verdict is rendered, whereas a party challenging the verdict on **evidentiary weight** does not. *Id.* at 513.

The Pennsylvania Supreme Court addressed this issue most recently in *Straub v. Cherne Industries*, 880 A.2d 561 (Pa. 2005), a case that is factually similar to the instant action and the case primarily relied upon by the trial court and Chin. In *Straub*, the plaintiff brought a claim against a manufacturer alleging both negligence and strict liability for an allegedly defective product.[5] At the end of trial, the parties and the trial court held a charging conference where they discussed proposed jury instructions and a verdict slip. The trial court stated that its intent was to make clear that the jury could find the defendant liable for strict liability, negligence, or both because negligence and strict liability are distinct and independent of one another. Three verdict slips were presented to the jury – one related to the strict liability claim, one related to the negligence claim, and one related to damages. During its charge, the trial court expressly stated that the two claims were separate and distinct. Before the matter was submitted to the jury, no party objected to either the charge or verdict slip.

---

[5] The product was known as a "Muni-Ball," which "was an inflatable plug that served to temporarily seal the inside of a . . . sewer pipe during its installation to prevent water or debris from entering or draining from it." *Straub*, 880 A.2d at 562. The device exploded after the plaintiff inflated it and was about to close off the valve, causing serious injuries.

8

The jury subsequently found the product was not defective but found the defendant was negligent. The defendant did not object before the jury was discharged but subsequently filed post-trial motions, challenging the verdict as inconsistent. After the Superior Court did not find the issue waived, plaintiff appealed to the Supreme Court. Citing to Rule 227.1, the Supreme Court concluded that the defendant was required to object to the verdict slips and the accompanying instructions so that the trial court had the opportunity to correct the issue. *Straub*, 880 A.2d at 567. According to the Court, defendant's argument was that, "once the jury found that the [product] was not defective, there was nothing left for the jury to do, inasmuch as all [injured person's] evidence in negligence related to the design of and warnings on the product . . . ." *Id.* Because no objections were voiced, the Court concluded the issue was not preserved and was therefore waived.[6] *Id.* at 567-68.

Our Court and the Superior Court have applied the Supreme Court's precedent on a number of occasions. *See, e.g.*, *Cipolone v. Port Auth. Transit Sys. of Allegheny Cnty.*, 667 A.2d 474, 476 (Pa. Cmwlth. 1995) (challenge to weight of the evidence does not require contemporaneous objection as an inconsistent verdict does); *Shelhamer v. Crane, Inc.*, 58 A.3d 767, 771-72 (Pa. Super. 2012) (failure to object to jury verdict that product was factual cause of injury despite a finding that product was not defective or that plaintiff was not exposed to product required an objection prior to jury's discharge to preserve issue); *King v. Pulaski*, 710 A.2d 1200, 1204-05 (Pa. Super. 1998) (no contemporaneous objection required because

---

[6] Given the Court's disposition, it did not reach the merits of the issue of whether a finding that no defect exists in a products liability action precludes a finding of negligence. *Straub*, 880 A.2d at 568 n.9.

challenge was to weight of the evidence); *Fillmore v. Hill*, 665 A.2d 514, 517-19 (Pa. Super. 1995) (argument that award of zero damages went to weight of the evidence and did not require a contemporaneous objection before the jury is discharged).

Similar to *Straub*, here, New Flyer focuses on the jury's finding "that the bus was not **defective** in either its design or the adequacy of New Flyer's warnings, but . . . the jury found that New Flyer was **negligent** in its design and/or failure to provide adequate warnings." (New Flyer's Br. at 39 (emphasis added).) It argues that because there was no finding of a product defect, there cannot be a finding of negligence, either. It claims it was not required to object at the time the verdict was rendered, pointing out that the trial court had already re-instructed the jury on the topic of product defects and also polled the jury, which confirmed that the jury intended the inconsistent result it reached. As a result, it contends that objecting once the verdict was read would have been futile because there was nothing the trial court could do to cure the error, short of directing the jury to change its verdict.

However, as outlined above, our Supreme Court precedent makes clear that a party must contemporaneously object at the time a verdict is rendered, and before the jury is discharged, if it believes the verdict is inconsistent. New Flyer cites *Fillmore* for the proposition that a trial court cannot inject itself into deliberations and suggest a substantive change in the jury's findings, but *Fillmore* involved a challenge to the weight of the evidence, not to an inconsistent verdict, as we have here. It is noteworthy that following the Superior Court's decision in *Fillmore*, our Supreme Court in *Criswell*, explained the rationale behind the different treatment of inconsistent verdicts versus verdicts that are against the weight of the evidence:

10

**It is one thing to tell the jury to resume deliberations because its verdict is inconsistent, but it is quite another to direct it to resume deliberations because, in the court[']s view, the verdict rendered so far departs from the evidence as to shock the judicial conscience**. . . . [A]n order to resume deliberations based on a weight of the evidence instruction would intrude upon the province of the jury.

834 A.2d at 513 (emphasis added).[7]

Applying the above legal principles to this case, we agree with the trial court that New Flyer's failure to object following the announcement of the verdict but before the jury was discharged resulted in its argument that the verdict was inconsistent being waived. Because we find this issue waived, like the Supreme Court in *Straub,* we need not reach New Flyer's argument that a finding of no defect necessarily requires a finding that there was no negligence.

## III. Weight and Sufficiency of the Evidence[8]

We next turn to New Flyer's argument that there was insufficient evidence to support the jury's verdict and that the verdict was against the weight of the evidence.[9] It lists over two pages of evidence that, in its opinion, demonstrates

---

[7] The Court also noted that "[a] majority of federal circuits that have considered the issue have adopted a similar rule with respect to claims of inconsistency in the jury verdict." *Criswell*, 834 A.2d at 510 n.1 (citations omitted).

[8] Our review "is limited to the determination of whether the trial court abused its discretion or committed an error of law." *Kennedy v. Sell*, 816 A.2d 1153, 1156 (Pa. Super. 2003).

[9] Challenges to the sufficiency of the evidence and the weight of the evidence are distinct concepts but are frequently confused with one another. The Superior Court explained the difference, as follows:

> A sufficiency analysis . . . must begin by accepting the credibility and reliability of all evidence, viewed in the light most favorable to the verdict winner regardless of whether the appellant thinks that the evidence was believable. Alternatively, a claim that the verdict was against the weight of the evidence concedes that the

**(Footnote continued on next page…)**

11

New Flyer was not negligent. (*See* New Flyer's Br. at 26-28.) However, before reaching whether the verdict was not supported by sufficient evidence or was against the weight of the evidence, we must first determine whether New Flyer waived its challenge to the verdict, as the trial court found.

In its Rule 1925(a) Opinion, the trial court found that New Flyer asserted, in boilerplate fashion, that the verdict was against the weight of the evidence and was not supported by sufficient evidence, and that such vague or general assignments of error are insufficient to preserve the issue for appeal; therefore, the arguments are waived. (Trial Ct. Op. at 4-5.) In his brief, Chin echoes the trial court's sentiments and adds another basis for waiver – New Flyer's failure to move for nonsuit at the close of his case or for directed verdict at the close of all evidence. (*See* Chin's Br. at 16-22.)

## A.    <u>Waiver</u>

We begin with the trial court's finding that New Flyer waived its argument because of lack of specificity in its Rule 1925(b) statement of errors complained of on appeal (Rule 1925(b) statement).[10] The courts have consistently held that a

---

**(continued…)**

> evidence presented by the verdict winner was sufficient to satisfy the elements of the cause of action but contends that the evidence was unreliable and untrustworthy to such a degree that a verdict based upon it would shock one's sense of justice, and, therefore, a new trial would be necessary to cure the injustice. Further, under the standard of review for challenges to the weight of the evidence, [the] [c]ourt is under no obligation to view the evidence in the light most favorable to the verdict winner.

*Morin v. Brassington*, 871 A.2d 844, 851 (Pa. Super. 2005) (citations omitted).

[10] Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure provides, in pertinent part:

> If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order

**(Footnote continued on next page…)**

Rule 1925(b) statement does not conform to "the Rules of Appellate Procedure if it is so vague and broad that it does not identify the specific [issues] raised on appeal." *Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 803 (Pa. Super. 2007). The rationale is that:

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.
>
> In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.

*Id.* at 803-04 (quoting *Lineberger v. Wyeth*, 894 A.2d 141, 148 (Pa. Super. 2006)).

Before concluding that a Rule 1925(b) statement is too vague, the court must first "examine the record and any trial court opinion or order to ensure that the basis of the ruling [was] provided." *Id.* at 804. If not, an appellant faces a difficult task, which our Supreme Court has called a "trap." *Ryan v. Johnson*, 564 A.2d 1237, 1239 (Pa. 1989). In *Ryan*, the Supreme Court found that the Superior Court erred in dismissing an appeal on the grounds that appellant filed a vague statement of errors complained of on appeal, stating:

> Numerous issues were raised in the present case, and, inasmuch as the reasons for the court's order do not appear in the record, there was no way for appellant to know which issues the court viewed favorably and which issues it had rejected. Indeed, there was no way to know

_____

**(continued…)**

> directing the appellant to file of record in the trial court and serve on the judge a concise statement of errors complained of on appeal ("Statement").

Pa. R.A.P. 1925(b).

whether the issues had even been considered by the court. Obviously, unless one knows the basis for a court's order, there is no way to specifically challenge its rationale.

*Id.*

In accordance with *Ryan*, the Superior Court has likewise acknowledged that sometimes "an appellant may be **forced** to file a vague Rule 1925(b) statement." *Hess*, 925 A.2d at 804 (emphasis in original). When the reasons for a trial court's decision are not discernable from the record, the Superior Court has said it would be "unjust" to consider a vague Rule 1925(b) statement a violation of the Rule. *Id.* "Just as the trial judge cannot be made to guess what an appellant is complaining of on appeal, an appellant cannot be made to guess what the trial judge is thinking in his or her ruling." *Id.* (quoting *Commonwealth v. Zheng*, 908 A.2d 285, 288 (Pa. Super. 2006)). Thus, under these limited circumstances, it is inappropriate to find waiver or dismiss an appeal based upon a vague Rule 1925(b) statement. *Id.*

Here, following briefing and oral argument on New Flyer's Post-Trial Motion, the trial court simply issued a one-page order denying the Motion and entering judgment in favor of Chin. (*See* May 12, 2016 Order.) The Order is silent as to the Court's reasoning, and there was no accompanying opinion that explained same. Upon review of the transcript of argument on the Post-Trial Motion, we also find no discussion by the trial court as to its reasoning as it relates to the sufficiency and/or weight of the evidence argument. Thus, similar to *Ryan* and *Hess*, we are hesitant to fault New Flyer for a vague Rule 1925(b) statement when the Order it was appealing was equally lacking in detail and the trial court's reasoning was not otherwise available in the record. As the Supreme Court stated in *Ryan*, "[i]f the Court of Common Pleas viewed the statement furnished by appellant as not adequately specific to permit preparation of an opinion addressing

14

the issues on appeal, it should have ordered that a more explicit statement be filed." 564 A.2d at 1239. Here, the trial court could have done just that.

However, we do not believe a more specific Rule 1925(b) statement was even needed for the trial court to adequately address the issues raised. At the time this appeal was taken, New Flyer had already filed its Post-Trial Motion and a 41-page memorandum of law in support thereof, which detailed the bases for its Motion. Argument was also held on the Motion. Based upon the foregoing, we find that New Flyer's Rule 1925(b) statement was adequate to preserve the issues of whether or not the jury's verdict was supported by sufficient evidence and was against the weight of the evidence.

We next address Chin's argument that New Flyer's failure to move for a nonsuit at the close of his case and/or for a directed verdict at the close of all evidence bars its challenge to the sufficiency of the evidence. It is well-established that in order to preserve a challenge to the sufficiency of the evidence, the appellant must have moved for a nonsuit or directed verdict. *See Dep't of Gen. Servs. v. U.S. Mineral Prods. Co.*, 927 A.2d 717, 724-25 (Pa. Cmwlth. 2007) (*U.S. Mineral*),[11] *aff'd*, 956 A.2d 967 (Pa. 2008); *Haan v. Wells*, 103 A.3d 60, 68 (Pa. Super. 2014). By contrast, a motion for nonsuit or directed verdict is not necessary to preserve a claim that the verdict is against the weight of the evidence. *Haan*, 103 A.3d at 68. The rationale is that:

> a claim challenging the weight of the evidence is not the type of claim that must be raised before the jury is discharged. Rather, it is a claim which, by definition, ripens only after the verdict, and it is properly preserved so long as it is raised in timely post[-]verdict motions.

---

[11] Under our Internal Operating Procedures, a single-judge opinion, even if reported, shall only be cited for its persuasive value. 210 Pa. Code § 69.414(a).

*Id.* (quoting *Criswell*, 834 A.2d at 512).

Here, New Flyer did not seek nonsuit or a directed verdict at the close of Chin's case or the completion of all evidence. Because it failed to do so, it cannot challenge the sufficiency of the evidence now. However, as explained above, it was not required to move for nonsuit or directed verdict in order to preserve its right to challenge whether the verdict was against the weight of the evidence. Therefore, we turn to the merits of that issue next.

### B.   Weight of the Evidence

The standard of review for considering whether a verdict is against the weight of the evidence is well-settled:

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, **not of the underlying question of whether the verdict is against the weight of the evidence**. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Haan*, 103 A.3d at 70 (quoting *In re Estate of Smaling*, 80 A.3d 485, 490 (Pa. Super. 2013)) (emphasis added).

"[A] new trial based on [the] weight of the evidence . . . will not be granted unless the verdict is so contrary to the evidence as to shock one's sense of justice." *U.S. Mineral*, 927 A.2d at 723 (citing *Elliott v. Ionta*, 869 A.2d 502, 504 (Pa. Super. 2005)). "When a fact[-]finder's verdict is 'so opposed to the demonstrat[ed] facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre

16

and erratic conclusion, it can be said that the verdict is shocking.'" *Haan*, 103 A.3d at 70 (quoting *Green v. Johnson*, 227 A.2d 644, 645 (Pa. 1967) and *Farelli v. Marko*, 502 A.2d 1293, 1295 (Pa. Super. 1985)). "A mere conflict in testimony will not suffice as grounds for a new trial." *U.S. Mineral*, 927 A.2d at 723. Nor is it our function to determine whether we or another jury would reach an opposite conclusion based upon the evidence. *Mapp v. Wombucker*, 219 A.2d 681, 682 (Pa. 1966).

It is the trial judge's province to make this determination, and ours to review that determination for abuse of discretion. However, the trial court denied the Post-Trial Motion and found in its Rule 1925(a) Opinion that New Flyer waived its weight of the evidence argument; therefore, we do not have the benefit of the trial court's reasoning on this issue. Without knowing whether the trial court considered New Flyer's weight of the evidence argument or found the argument to be without merit, and what the grounds for that decision were, it is difficult to determine whether the trial court abused its discretion. Our review of the trial court's decision is thus hampered by the lack of the trial court's reasoning both in its Rule 1925(a) Opinion and elsewhere in the record on this issue. Consequently, we will remand the matter to the trial court to address the merits of New Flyer's weight of the evidence. *See Builders of Sanitary Sewers v. Tamaqua Borough Auth.*, 453 A.2d 674, 676 (Pa. Super. 1982) (remanding matter to trial court with direction to address the merits of an issue after finding it was not waived).

## IV. Sophisticated User/Purchaser Charge

Next, New Flyer argues that the trial court erred when it refused to charge the jury as to the sophisticated user[12] and/or sophisticated purchaser defense.[13] The

_____

[12] New Flyer's proposed charge on the sophisticated user defense was as follows:

Plaintiff contends that New Flyer failed to use reasonable care to inform likely users of the alleged dangerous condition associated with the buses that it sold to SEPTA. (*See* Restatement of Torts, 2nd § 388, comment g).

In determining the adequacy of the information that New Flyer disclosed under a failure to warn claim, the Court must decide whether New Flyer breached the standard of care required of a "reasonable" bus manufacturing company in a similar situation. Further, the required level of care must be proportionate to the seriousness of the consequences which are reasonably anticipated to occur with the allegedly defective product.

Finally, a warning of the inherent dangers associated with a product is considered sufficient, if it adequately notified the intended user of its inherent *non-obvious* dangers associated with the product. *Williamson v. Piper Aircraft Corp.*, 968 F.2d 380, 387 (3d Cir. 1992) (citing *Mackowick v. Westinghouse Elec. Corp.*, 575 A.2d 100, 102 (Pa. 1990)). A manufacturer is also able to presume that experts or skilled professionals in an industry that it sells to possess a mastery of its basic operations. Therefore, a manufacturer owes no duty to warn or instruct such persons on how to perform basic operations in that industry. *Mackowick*, 575 A.2d at 103 (internal citation omitted).

(R.R. at 262a (emphasis in original).)

[13] New Flyer's proposed charge on the sophisticated purchaser defense was as follows:

A manufacturer is not liable to an end-user for a failure to warn claim if: (1) the manufacturer could not feasibly warn the end-user; and (2) the manufacturer reasonably relied upon a knowledgeable intermediary, such as the end-user's employer, to warn the ultimate user of the product. [] *Philips v. A.P. Green Refractories Co.*, 630 A.2d 874 (Pa. Super. 1993), *aff'd sub nom[.] Philips v. A-Best Prods. Co.*, 665 A.2d 1167 (Pa. 1995).

Accordingly, you must decide whether New Flyer could not feasibly warn the end user of the product here, and whether SEPTA is a knowledgeable purchaser of transit buses such that New Flyer reasonably relied upon SEPTA to warn the end

**(Footnote continued on next page…)**

18

charges are based upon Section 388 of the Restatement (Second) of Torts, which provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in a manner for which it is supplied, if the supplier
>
> (a)  knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> (b)  has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> (c)  fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388 (1965). Comment *n* to Section 388 further provides that the duty to warn is discharged if information about the product's dangerous propensities is provided by the supplier to a third person upon whom it can reasonably rely to communicate the information to the ultimate users of the product or to those who may be exposed to its hazardous effects. *Id.*, cmt. *n*. New Flyer contends that SEPTA was a sophisticated purchaser of the transit buses, and New Flyer's responsibility to warn should have been lessened as a result.

"[O]ur standard of review when considering the denial of jury instructions is one of deference – an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Galvin*, 985 A.2d 783, 798-99 (Pa. 2009), *cert. denied*, 559 U.S. 1051 (2010). The appellate

---

**(continued…)**

user – namely SEPTA bus operators – of the alleged dangerous condition of the buses.

(R.R. at 263a.)

19

court's function, in reviewing a claim regarding the refusal of a court to give a specific jury instruction, is "to determine whether the record supports the trial court's decision." *Lockhart v. List*, 665 A.2d 1176, 1179 (Pa. 1995). "The law is clear that a trial court is bound to charge only on that **law** for which there is some factual support in the record." *Id.* (emphasis added).

The trial court in its Rule 1925(a) Opinion explained that it refused the proposed charges because Pennsylvania has not adopted the concepts. It specifically relied upon the Superior Court's decision in *Amato v. Bell & Gossett*, 116 A.3d 607 (Pa. Super. 2015), *appeal granted in part,* 130 A.3d 1283 (Pa.), and *appeal dismissed as improvidently granted*, 150 A.3d 956 (Pa. 2016). In *Amato*, a defendant requested that the jury be instructed on the sophisticated user defense in a case where a boilermaker contracted mesothelioma while working at a Naval shipyard from exposure to asbestos that the defendant supplied. The defendant claimed the United States Navy was a sophisticated user, and as such, the Navy was responsible for warning its workers of the dangers of asbestos. The Superior Court in *Amato* recognized that in an earlier decision, which New Flyer heavily relies upon, *Phillips v. A.P. Green Refractories Co.*, 630 A.2d 874 (Pa. Super. 1993), a split panel of the Superior Court purported to adopt the doctrine as a defense to strict liability and negligence cases. *Amato*, 116 A.3d at 624 (citing *Phillips*). However, the Superior Court found that language was merely *dicta*. *Id.* In doing so, it quoted Judge Hudock's concurring and dissenting statement in *Phillips*, wherein he noted that "[s]ince the majority [in *Phillips*] found the strict liability issue should not have been submitted to the jury, its 'holding' that the [sophisticated user] doctrine is an affirmative defense is *dicta*." *Id.* (quoting *Phillips*, 630 A.2d at 884 (Hudock, J., concurring and dissenting)). The court also

cited to the Pennsylvania Supreme Court's decision on appeal in *Phillips*, wherein the Supreme Court also concluded that because no strict liability action would lie, to address the sophisticated user defense "would be to engage in mere *obiter dicta.*" *Id.* (quoting *Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1172 (Pa. 1995)). Therefore, the Superior Court in *Amato* found the defense has never been adopted in Pennsylvania, and as a result, the trial court properly denied the request. *Id.*

Based upon the Superior Court's opinion in *Amato* and the Supreme Court's opinion in *Phillips*, we agree that Pennsylvania has yet to adopt Section 388 of the Restatement. Because a court is limited to charging on the **law**, *Lockhart*, 665 A.2d at 1179, and the sophisticated user/purchaser doctrine is not the law in Pennsylvania, we discern no error in the trial court refusing to instruct the jury on such.

## V. Excessiveness of Verdict

Lastly, we address New Flyer's claim that the trial court erred in refusing to set aside the verdict or order remittitur because the award of $5 million in damages was excessive. Specifically, New Flyer argues that the award of $5 million was only for pain and suffering, which was largely supported by Chin's own subjective complaints.

We review the trial court's decision for an abuse of discretion. *Smalls v. Pittsburgh-Corning Corp.*, 843 A.2d 410, 414 (Pa. Super. 2004). In reviewing a jury award, we cannot "substitute our judgment for that of the fact-finder" and should "'give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence.'" *Id.* (quoting *Ferrer v. Trustees of the Univ. of Pa.*, 825 A.2d 591, 611 (Pa. 2002)). The mere fact that a

verdict is large does not necessarily mean it is excessive. *Gurley v. Janssen Pharm., Inc.*, 113 A.3d 283, 294 (Pa. Super. 2015). Rather, each case is unique and dependent upon its own special circumstances. *Id.* To assist with evaluating a jury award, a court may consider the following factors: (1) the severity of the injury; (2) whether the injury is demonstrated by objective physical evidence or subjective evidence; (3) the permanency of the injury; (4) the plaintiff's ability to continue employment; (5) the disparity between the amount of out-of-pocket expenses and the verdict amount; and (6) the damages requested by plaintiff in the complaint. *Id.* (citation omitted).

As a preliminary matter, we note that New Flyer's characterization that the $5 million award was "**solely**" for pain and suffering is misleading. The award was for non-economic loss, which includes past and future pain and suffering, past and future embarrassment and humiliation, past and future loss of life's pleasures, and past and future disfigurement. (R.R. at 664a, 695a.)

Upon review of the record, we conclude that it supports the trial court's ruling regarding the jury's damage award for non-economic damages. The trial court properly disregarded the last three factors, noting Chin did not seek damages for wage loss or loss of earning capacity, did not seek reimbursement of out-of-pocket expenses, and simply stated he sought damages in an amount exceeding Philadelphia County's compulsory arbitration limits. (Trial Ct. Op. at 28.) The trial court then embarked on a thorough analysis of the evidence, which it found supportive of the first three factors. (*Id.* at 28-36.) We find no abuse of discretion in this analysis, and as a result, there is no basis to disturb the jury's verdict. Therefore, New Flyer's final issue on appeal also does not merit relief.

## VI.    Conclusion

Based upon the foregoing, the trial court's May 12, 2016 Order is vacated to the extent the trial court found New Flyer's argument concerning the weight of the evidence waived, and the matter is remanded for the trial court to issue an opinion and order addressing whether the verdict was against the weight of the evidence. The balance of the trial court's Order is affirmed.

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven Chin                    :

                       :

          v.            :    No. 1896 C.D. 2016

                       :

New Flyer of America, Inc. and     :

Southeastern Pennsylvania      :

Transportation Authority        :

                       :

Appeal of: New Flyer of America, Inc.  :

# O R D E R

**NOW**, August 24, 2017, the Order of the Court of Common Pleas of Philadelphia County (trial court), dated May 12, 2016, is **AFFIRMED**, except for the portion of the Order that found New Flyer of America, Inc.'s (New Flyer) argument concerning the verdict being against the weight of the evidence waived. That portion of the Order is **VACATED**, and this matter is **REMANDED** for the trial court to file an opinion and order addressing the merits of New Flyer's weight of the evidence claim, within 90 days of this Order.

Jurisdiction relinquished.

 

 

_____

**RENÉE COHN JUBELIRER,** Judge