**Janet TUCKER, Appellant,**

v.

**BENSALEM TOWNSHIP SCHOOL DISTRICT.**

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2009.

Decided Dec. 17, 2009.

Walter D. Campbell, Levittown, for appellant.

E. Ralph Godfrey, Lemoyne, for appellee.

BEFORE: LEAVITT, Judge, and KELLEY, Senior Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Janet Tucker (Tucker) appeals from an order of the Court of Common Pleas of Bucks County (trial court) which denied Tucker's motion for a new trial after the jury found in favor of the Bensalem Township School District (School District). We affirm.

Tucker was employed as a bus driver for the Bucks County Head Start program (Head Start). Through a license agreement, Head Start was permitted to park three buses at the School District's Berg Transportation Center (Center). The spot for Tucker's bus was located at the rear of the blacktopped parking lot in an area with an acute and prominent downward slope. On February 1, 2000, the date of the incident, there were icy conditions throughout the Bensalem, Bucks County area. Tucker testified that she arrived in her vehicle at the Center at approximately 6:15 a.m. She noticed the lot had been plowed, that there was black ice under her feet as she walked to her bus, that there was ice on her bus, and that her bus had been moved. Tucker proceeded to perform her daily inspection inside the bus and, because it was very cold, Tucker started her bus and then left her bus, intending to get back into her warm vehicle. Tucker shut the doors of the bus, so the heat would stay in the bus, and when she turned around, "the next thing I knew I was on my backside. And I tried to save my fall by putting my arm back. It was like I just—my neck went back, my shoulder, my elbow, and I heard a snap. And I was like, Oh no." Notes of Testimony (N.T.), November 12, 2008, at 115. Tucker suffered serious and disabling injuries. Tucker further testified that she had no idea if the parking lot had been salted or sanded, that when she fell, her clothes got wet and that the bad weather conditions, the melting of the snow and ice, were not limited to just the Center parking lot.

Tucker commenced an action against the School District, as the owner, possessor and custodian of the Center parking lot. A three-day jury trial was held, at which, Tucker presented the testimony of Meteorologist, Stephen Wistar (Wistar) of AccuWeather.[1] Wistar testified as to various storms hitting the area, the amount of snow that fell in the area, the freezing, melting and refreezing that would have been occurring, including from midnight on January 31, 2000, through the early morning hours on February 1, 2000, when Tucker's fall occurred. N.T., November

---

1. There is no dispute that beginning on January 20, 2000, the first of several snowstorms hit the Bensalem area.

14, 2008, at 30–36. Wistar also addressed the term "black ice", describing it as "a clear ice ... like an ice cube in the refrigerator. You can see through it. It got the term "black ice" because if it forms on asphalt, it would look black." *Id.* at 37.

Terry Watkins (Watkins), an employee of Head Start from October 1999 through February of 2000, testified that during her employment with Head Start, she did not have any problems with the Center parking lot. She stated that she could not recall the parking lot not being plowed. She further stated that on February 1, 2000, the general weather conditions were icy, that it had been snowing previously, snow was still on the ground and the roads were slippery and wet. Watkins arrived at the Center parking lot late, due to the icy road conditions. She stated that the lot looked wet, slippery and icy, but was not in an abnormal condition, as the snow had been plowed up against the outside perimeter fence.

Next, Patricia O'Neill (O'Neill), an employee of the School District from 1983 through 2002, testified that when there was bad weather the School District would plow and put down salt on the parking lot. O'Neill stated that she never had any problems with the snow and ice removal from the Center lot.

The testimony of Dorothy Van Horn (Van Horn), an employee of Head Start from 1999 through 2004, was presented. Van Horn stated that on the day in question, she went to work at the Center lot and that it was cold and snowy. Van Horn further stated that the Center lot had been plowed and salted before she arrived that day.

Danielle Y. James (James), another employee, testified that when she arrived to work on the day in question, the Center lot had been plowed and the roadways in the area were slippery and icy.

Tim Hammond (Hammond), the salt operator who removed the snow and ice from the Center parking lot, testified that he worked six hours of overtime on January 31, 2000, the evening prior to this incident, removing snow and ice.

Robert Mosely (Mosely), the Director of Facility Operations for the School District, testified that Hammond was called to work at 11:55 p.m. on January 31, 2000 and worked until 6:00 a.m. on February 1, 2000, removing snow and ice, due to the bad weather.

Tucker also called R. Andrew Fletcher, III (Fletcher), as a liability expert. Fletcher is a licensed architect. He indicated his expertise in the area of architecture and in construction of parking lots and code violations. Fletcher agreed that the case involved a maintenance issue, not a design defect. Fletcher testified that he never worked as a facility coordinator, that he is not a licensed code officer in Pennsylvania and he is not a licensed engineer.[2] The trial court precluded his testimony, finding him not qualified to render an opinion as to the standard of care for the proper salting and removing of snow and ice from a parking lot during general icy conditions. The trial court further held this matter was within the common knowledge of a lay person.

The trial also included testimony of several School District employees, including Joseph Dyer (Dyer), the head groundskeeper for the School District. Dyer testified to the general practices for maintain-

**2.** Prior to commencement of the trial, Tucker stipulated that she was not pursuing a design defect theory and the trial court instructed Tucker that if evidence of a design defect was presented, it would not be admitted.

ing the premises in winter conditions. Carolyn Amato, Ronald Sterling, and Jack Myers also testified as to weather conditions and the Center parking lot.

■ At the close of the three-day trial, the jury unanimously determined that there had been no negligence on the part of the School District and the trial court rendered a verdict of no negligence against Tucker. Tucker filed a motion requesting post trial relief in the form of a new trial. Such motion was denied and judgment was entered on the jury's determination, from which, Tucker now appeals to our court.[3]

Tucker contends that the trial court erred in overruling Tucker's objection during cross-examination of her witness, Danielle James; erred and abused its discretion in sustaining the School District's objection to Tucker's expert witness, R. Andrew Fletcher, III, as not qualified; erred and abused its discretion in denying Tucker a new trial based upon the jury's determination of no actionable negligence on the part of the School District; and erred and abused its discretion in not granting Tucker a new trial on the question of negligence, as negligence was proven and the jury verdict was contrary to law and the evidence presented.

■ First, Tucker contends that the trial court erred in overruling Tucker's objection during cross-examination of her witness Danielle James. Specifically, Tucker states that the trial court erred in permitting the cross-examination of James where she compared the driving condition of the Center parking lot with the driving surface of the public highways she had driven over while coming to work the morning in question. Tucker states that the error of law was both material, as it permitted the School District to inject an unnecessary and irrelevant consideration into the fact finder, and highly prejudicial to Tucker in her development of proof of the actionable negligence of the School District, the owner and possessor in control of the Center parking lot.

Section 611(b) of the Pennsylvania Rules of Evidence provides in pertinent part as follows:

(b) Scope of cross-examination. Cross-examination of a witness other than a party in a civil case should be limited to the subject matter of the direct examination and matters affecting credibility; however, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination. A party witness in a civil case may be cross-examined by an adverse party on any matter relevant to any issue in the case, including credibility, unless the court, in the interests of justice, limits the cross-examination with respect to matters not testified to on direct examination.

■ The issue in the present controversy is whether the School District properly treated and removed snow and ice from the Center parking lot. In Pennsylvania, the issue of the condition of the weather and surrounding area is critical to the subject matter involving a slip and fall

---

**3.** Our review when the trial court denies a motion for a new trial is limited to a determination of whether there has been an error of law controlling the outcome of the case, or an abuse of discretion where the ruling turns on the weight of the evidence. *Wright v. Commonwealth of Pennsylvania, Department of Transportation,* 142 Pa.Cmwlth. 91, 596 A.2d 1241 (1991). The trial court abuses its discretion when it misapplies the law or when it reaches a manifestly unreasonable, biased or prejudiced result. *Girard Trust Bank v. Remick,* 215 Pa.Super. 375, 258 A.2d 882 (1969). If support for the trial court's decision is found in the record, the order must be affirmed. *Pirozzi v. Penske Olds–Cadillac–GMC, Inc.,* 413 Pa.Super. 308, 605 A.2d 373 (1992), *petition for allowance of appeal denied,* 532 Pa. 665, 616 A.2d 985 (1992).

case on ice. Specifically, the law does not require the property owner to keep his parking lot free from ice at all times, as climatic conditions would make doing so impossible. *Rinaldi v. Levine,* 406 Pa. 74, 176 A.2d 623 (1962). It is well established that there is no liability when there is generally slippery conditions. *Goodman v. Corn Exchange National Bank and Trust Co.,* 331 Pa. 587, 200 A. 642 (1938). Here, the subject matter involved the generally icy conditions throughout the Bensalem area at the time of the incident, and whether the alleged slippery conditions were allowed to remain for an unreasonable amount of time on the parking lot.

James was cross-examined by the School District as follows:

Q. Yes. You had testified about some icy patches on the transportation center's parking lot. That same morning the conditions on the roadways outside the transportation were also icy and slippery; correct?

A. Correct.

N.T. at 29; R.R. at 1059A. On redirect-examination, Tucker's counsel asked James the following:

Q. Ms. James, you said that the roads were icy and slippery that morning on February 1, 2000?

A. Yes.

Q. Is that the roads that were in the immediate vicinity of the Berg Transportation Center in Bensalem?

A. The roads from where I traveled from my house until the transportation center were icy.

N.T. at 30; R.R. at 1060A.

■ The trial court did not err in permitting the cross-examination of James, as it directly dealt with the subject matter of this case, the general icy conditions and the length of time the alleged slippery condition was allowed to exist on the parking lot. Questioning on this matter directly flowed from Tucker's direct examination on the cause of the icy condition of the parking lot. The comparison between the parking lot and the icy conditions of the public roads directly correlates to the general icy conditions in the surrounding community.[4] The trial court properly permitted the cross-examination of James to include the subject matter of generally icy conditions of the surrounding Bensalem area because it was relevant to the issue at hand. Assuming arguendo, however, that the cross-examination of Tucker's witness exceeded the scope of direct examination, Tucker fails to establish that she was prejudiced by the cross-examination of James in order to warrant the granting of a new trial, especially in view of the fact that numerous other witnesses testified about the weather and generally icy conditions in the Bensalem area.

■ Next, Tucker contends that the trial court erred and abused its discretion in sustaining the School District's objection to Tucker's expert witness, R. Andrew Fletcher, III, as not qualified. Specifically, Tucker contends that Fletcher, a licensed architect, whose voir dire examination established his professional expertise in the field of architecture with forensic experience in property maintenance, had relevant testimony to set forth. Tucker maintains that Fletcher would have testified as to whether "the Defendant properly maintain[ed] and ke[pt] this property in a

4. We note that Tucker and several other witnesses also testified about the weather and road conditions in the surrounding Bensalem area. Tucker stated that she left her house early because of the icy and bad road conditions that day. She further stated that the roads were slippery, icy and that she thought school would be cancelled due to the weather. N.T. at 106–107, 127–129; R.R. at 985A–986A, 1006A–1008A.

safe way for a legitimate, lawful user . . . under the totality of the developments. . . ." N.T. at 77; R.R. at 1296A.

Tucker contends that Fletcher's testimony would have been invaluable in helping the jury to determine whether the School District had been negligent in failing to take corrective action to either prevent the development of ice in the rear sloping section of the Center parking lot or to treat that section of the lot with the appropriate chemicals in order to provide a reasonably safe walking surface for the School District's lawful users.

The trial court determined that, as opinion testimony is not permitted where the issue involves a matter of common knowledge, Fletcher's testimony would not be allowed. *Commonwealth v. Dunkle,* 529 Pa. 168, 602 A.2d 830 (1992). An expert's testimony is admissible only if the subject requires knowledge, information or skill beyond that possessed by the ordinary juror.[5] *Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920 (1986). Here, the snow and ice removal from a parking lot is within the common knowledge and experience of a lay person.

Further, "[i]t is well established that only expert testimony which assists the jury is admissible, and the trial court has broad discretion in making this determination." *Commonwealth v. Blasioli,* 454

Pa.Super. 207, 685 A.2d 151 (1996), *aff'd,* 552 Pa. 149, 713 A.2d 1117 (1998). Experts are permitted only to render opinions in the specific field(s) in which they have expertise, and not to speculate outside their fields. *Christiansen v. Silfies,* 446 Pa.Super. 464, 667 A.2d 396 (1995).

As noted previously, Tucker stipulated that she was not going to present any evidence with regard to a design defect of the parking lot. The trial court then instructed Tucker that if evidence of a design defect was produced, it would be excluded. N.T. at 14; R.R. at 893A. Since Tucker conceded that the parking lot was not defective, the only remaining issue was whether the School District properly removed the snow and ice during generally icy conditions from its parking lot on the date in question.

Fletcher testified that he had experience in designing buildings, but did not have experience or training in the maintenance of parking lots, or in snow and ice removal from parking lots. Fletcher agreed that the issue in this case was the maintenance of the parking lot, not a design defect. N.T. at 66; R.R. at 1285A. Fletcher testified that he was not a hydrologist or a chemist that studies salt or other chemical changes. N.T. at 68; R.R. at 1287A. Thus, the trial court did not err or abuse

---

5. Rule 702 of the Pennsylvania Rules of Evidence provides for testimony by experts as follows:

If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Comment:

\* \* \*

Pa.R.E. 702 does not change the Pennsylvania rule for qualifying a witness to testify as an expert. In *Miller v. Brass Rail Tavern, Inc.,* 541 Pa. 474, 480–81, 664 A.2d 525, 528 (1995), the Supreme Court stated:

The test to be applied when qualifying a witness to testify as an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine.

its discretion in excluding Fletcher's expert testimony. Fletcher did not have the required specialized knowledge, training, education or experience beyond that possessed by a layperson to testify as to the standard of care concerning the snow and ice removal from a parking lot during generally icy conditions.

Next, Tucker contends that the trial court erred and abused its discretion in denying Tucker a new trial based upon the jury's determination of no actionable negligence on the part of the School District. Tucker states that the jury's determination of no negligence after the School District acknowledged it was the owner, possessor-in-control, and lessor, as well as the party responsible for the safety and maintenance of the parking lot, was in error and represents a deviation from the accepted principles of applicable law. Tucker states that if they had applied the correct legal principles, they would have determined that Tucker's fall was the direct or factual result of negligence on the part of the School District with regard to its maintenance and treatment of its parking lot on the day in question.[6]

■ Essentially, Tucker contends that the verdict is against the weight of the evidence. However, after review of the record testimony, we agree with the trial court that the jury's verdict is not against the weight of the evidence. "[A] new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Kopeika v. Medical Services Association of Pennsylvania*, 347 Pa.Super. 500, 500 A.2d 1168, 1171 (1985).

■ We note that "credibility determinations are within the sole province of the jury." *Martin v. Evans*, 551 Pa. 496, 505, 711 A.2d 458, 463 (1998). "A jury is entitled to believe all, part, or none of the evidence presented [and] can believe any part of a witness' testimony that they choose, and may disregard any portion of the testimony that they disbelieve." *Randt v. Abex Corp.*, 448 Pa.Super. 224, 671 A.2d 228 (1996). Our court will not award a new trial if there is evidence supporting the jury's finding. Our Supreme Court has held that "it is the jury's duty to make a credibility determination and to decide whether ... ordinary care [was exercised] under the circumstances." *Martin.*

■ In the present controversy, the School District presented testimony that the Center parking lot was properly treated on the day in question. Tucker also presented conflicting testimony that it was not properly treated. The jury chose to believe the evidence presented by the School District. The record contains suffi-

---

**6.** Tucker states that the evidence shows that the parking lot was plowed but that there was an area in the rear that was untreated for expected atmospheric changes resulting from the weather conditions. Tucker contends that the trial judge should have granted a new trial, as it is clear that the condition of the untreated parking lot allowed the development of black ice or, in the alternative, that the failure to take proper remedial action, in either removing the black ice or in offering alternative methods or procedures, to enable a lawful user of the property to safely traverse the area.

Tucker states that the dangerous condition of the rear sloping section of the parking lot and the fact that Tucker was a lawful user of the lot, should result in a jury verdict of actionable negligence by the School District. As the School District is the owner, the accident occurred on the School District's property, and there was an injury to a person holding a legal relationship as an invitee, the jury should have found negligence.

cient facts supporting the School District's version of the accident that were believed by the jury. Thus, the verdict must be upheld.

Finally, Tucker contends that the trial court erred and abused its discretion in not granting Tucker a new trial on the question of negligence, as negligence was proven and the jury verdict was contrary to law and the evidence presented.

■ The jury properly concluded that Tucker failed to establish a cause of action for negligence. A property owner is not required to keep his parking lot free from ice at all times, as climatic conditions would make doing so impossible. *Rinaldi.* Further, there is no liability under the law for a generally slippery condition. *Morin v. Traveler's Rest Motel, Inc.,* 704 A.2d 1085 (Pa.Super.1997). In order for a person to recover for injuries sustained in a fall on ice, they must prove that there was a dangerous condition due to ridges or elevations which were created by a defendant's negligence, or which were allowed to remain for an unreasonable length of time. *Wilson v. Howard Johnson Restaurant,* 421 Pa. 455, 219 A.2d 676 (1966). Tucker failed to meet such burden. Testimony suggests that the evidence establishes that on and before February 1, 2000, there were generally icy conditions in the Bensalem area, which were continuing at the time of the incident. The local roads and parking lots were all icy and slippery

due to the weather. Testimony further reveals that the Center lot was plowed and salted.[7] The jury had substantial evidence to conclude, as it obviously did, that Tucker fell because of the slippery surface caused by bad weather in the nature of a generally icy condition rather than the negligence of the School District. The verdict is consistent with the applicable law.[8]

Accordingly, we must affirm the decision of the trial court.

### ORDER

AND NOW, this 17th day of December, 2009, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is affirmed.

---

7. At all times during the trial, the School District asserted that it had plowed and salted the parking lot and did not violate the applicable standard of care. The evidence of record supports such assertion.

8. Further, under the law, the standard of care which a possessor of land owes to an entrant upon the land depends upon whether the person is classified as a trespasser, a licensee, or a business invitee. Tucker attempted to prove that she had the legal status of a business invitee. The School District contended that

Tucker was a licensee. The School District and Head Start had a license agreement which permitted Head Start to park three buses at the Center lot. The School District did not charge a fee for the use of the lot. The trial court charged the jury on both standards since there was sufficient evidence to support both theories. The charge to the jury was correct, as conceded by Tucker. The jury's decision was based upon a proper charge.