# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Steven Chin : | |
| : | |
| v. : | No. 1871 C.D. 2017 |
| : | Argued: June 7, 2018 |
| New Flyer of America, Inc. and : | |
| Southeastern Pennsylvania : | |
| Transportation Authority : | |
| : | |
| Appeal of: New Flyer of America, : | |
| Inc. : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED:  July 16, 2018**

Steven Chin (Chin) suffered personal injuries when a bus struck him while he crossed a street in a crosswalk in Philadelphia.  In addition to Southeastern Pennsylvania Transportation Authority (SEPTA), which owned and operated the bus, Chin sued the bus manufacturer, New Flyer of America, Inc. (New Flyer), asserting negligence and product liability/defective design claims related to New Flyer's placement of the driver's side or roadside mirror that Chin alleged obstructed the bus driver's view.  A jury returned a verdict in favor of New Flyer on the product liability/defective design claim but against New Flyer on the negligence count,

apportioning liability as 25 percent for New Flyer and 75 percent for SEPTA.[1] New Flyer filed various post-trial motions, which were denied by the Court of Common Pleas of Philadelphia County (trial court), and judgment was entered. New Flyer appealed, and on appeal, we affirmed the trial court's order, except to the extent the trial court found New Flyer's argument that the verdict was against the weight of the evidence was waived. *Chin v. New Flyer of America, Inc.*, 169 A.3d 689, 692-94, 703 (Pa. Cmwlth. 2017) (*Chin I*). On that issue, we vacated the trial court's order and remanded the matter for the trial court to issue an opinion and order addressing the merits of New Flyer's evidentiary weight claim. On remand, the trial court again found the issue was waived but also addressed the merits, concluding the verdict was not against the weight of the evidence. New Flyer has appealed, and we are once again called upon to review the trial court's Order.

## Factual and Procedural Background

We restate the facts as set forth in *Chin I*:

> On September 5, 2012, Chin was walking west along Arch Street, near the intersection with Sixth Street in Philadelphia, on his way to work. At the same time, a bus operated by SEPTA was also traveling west on Arch Street and stopped at a traffic light at the same intersection. After the signal changed, the bus proceeded to make a left turn onto Sixth Street, where it struck Chin, who was approximately halfway across the crosswalk at the time.
>
> Chin, who was 25 years old at the time of the accident, suffered a degloving injury, which occurs when the skin and soft tissue are torn from the bone, to his right foot and ankle. He was initially denied pain medication because it would interfere with efforts to determine the extent of his nerve damage in his right foot and ankle. Because of the soft tissue injury, doctors could not use internal screws or pins to

---

[1] Although SEPTA settled before trial, it remained on the verdict slip for purposes of apportionment.

2

stabilize the multiple fractures in the foot and ankle; instead, they were stabilized using an external fixator system, which is screwed through the skin and into the bone. Chin testified that he was hospitalized for approximately one month before he was released home, where he was bedridden because of the external fixator, which was not removed until January 2013. After several months of physical therapy, Chin is able to walk, but his right ankle is stuck in a downward pointed position with very limited motion, affecting his gait. His doctors testified that the injury is permanent, and his abnormal gait is impacting his knee, hip, and back; they have not ruled out the need for future surgery. Since his injury, Chin has not been able to return to running, a sport he once enjoyed.

At trial, the driver of the bus testified that he saw three other individuals waiting at the corner but did not see Chin because the driver's side mirror, also known as the roadside mirror, obstructed his view during left-hand turns. New Flyer designed and manufactured the buses. SEPTA provided technical specifications, which were developed by its engineering group. The technical specifications called for use of an 8" x 15" Rosco brand mirror on the driver's side but did not specify the height to mount it, stating only that it should be positioned "to minimize blind spots for the operator in front of mirrors." On the other hand, the specifications were specific as to the height of a curbside mirror, which is located on the right side of the bus. When New Flyer was unable to build the buses to meet the specification for the curbside mirror, it contacted SEPTA and sought a change to the height specifications. At no time did New Flyer request a change related to the driver's side mirror or advise SEPTA that the Rosco mirror should not be used.

A design engineer at New Flyer testified that the driver's side mirror on SEPTA buses is mounted at 46 inches high whereas driver's side mirrors on buses for other transportation authorities are typically mounted between 40 to 41 inches high. In a subsequent build cycle, New Flyer lowered the mount of the driver's side mirror by five to six inches on the SEPTA buses. When SEPTA contacted New Flyer about the change, New Flyer retrofitted the buses with a new arm, which raised the height of the mount back to 46 inches. The design engineer was not aware of any other customer using a 46-inch mount, which is the highest mount he was aware of, but the mirror does not violate any laws or regulations. He explained that the mirror causes an 8-inch obstruction, and the A-post, which is the post at the end of the windshield, causes another 4-inch obstruction. No matter what height

the mirror is mounted, New Flyer representatives said an obstruction would result because visual obstructions are inherent in mirrors.

After an increase in pedestrian accidents where drivers raised concerns about sight lines related to the mirrors, SEPTA conducted various line of vision checks. Two were internally conducted in 2004 and 2012, respectively, both of which acknowledged a temporary obstruction but nonetheless determined the allegation of an engineering flaw in the New Flyer bus was unfounded. SEPTA also contracted with a third party, STV, to evaluate the driver's side mirror in 2013. The STV report states that the mirrors are located higher than the normal mount and that the Rosco mirror is taller than most bus mirrors. The STV report states that reducing the height of the top of the mirror by 4 inches would provide an additional 17 feet of visibility. STV recommended that SEPTA consider, *inter alia*, lowering or reducing the size of the driver's side mirror in the future. In 2015, SEPTA voluntarily retrofitted its entire fleet with a smaller mirror at its own cost.

To help combat the visual obstruction caused by the driver's side mirrors, SEPTA developed a pedestrian awareness program to train drivers to utilize multiple techniques to mitigate it. These techniques include: waiting four seconds after a signal changes before beginning a turn as the delay would allow any pedestrians to clear the obstruction; squaring off turns, meaning drivers pull straight ahead into the intersection prior to commencing the turn, such that any pedestrians would be visible through the side window; and "rocking and rolling," a technique whereby the driver would rock back and forth and from side to side in their seat to see around the mirror. The driver here, a 28-year veteran of SEPTA, testified he did use these techniques.

Over the years, the union representing SEPTA drivers raised the issue of visual obstructions because of the mirrors in defending drivers involved in left-hand turn accidents.[FN2] Following two fatal pedestrian accidents in 2006, SEPTA contacted a representative at New Flyer, requesting that he provide testimony at arbitration hearings for the drivers involved in those accidents. The representative was advised by in-house counsel and outside counsel for New Flyer to not provide testimony regarding the mirrors because they were concerned about potential exposure to litigation.

4

FN2 In 2011, there were four left-hand turn accidents, three in 2012, and five in 2013, one of which was fatal. SEPTA drivers make approximately 100,000 left-hand turns per day.

*Chin I*, 169 A.3d at 692-94.

At the conclusion of trial, the jury found in favor of New Flyer on the product liability/defective design claim but against it on the negligence claim. The jury awarded Chin $5 million in non-economic damages. Following trial, New Flyer filed a Motion for Post-Trial Relief (Post-Trial Motion), seeking judgment notwithstanding the verdict (judgment n.o.v.), a new trial on the merits and/or on damages, or remittitur, all of which were denied by the trial court.

New Flyer then appealed to this Court asserting: (1) the verdict was irreconcilably inconsistent when the jury found there was no product defect but still found New Flyer acted negligently; (2) the jury's verdict was against the weight of the evidence or not supported by sufficient evidence; (3) the trial court erred in refusing to charge the jury on the sophisticated user and sophisticated purchaser doctrines; and (4) the trial court erred in refusing to grant a new trial as to damages or remittitur based upon an excessive verdict. We affirmed the trial court, except to the extent the trial court found New Flyer had waived its weight of the evidence claim by asserting the verdict was against the weight of the evidence in boilerplate fashion in its Rule 1925(b) Statement of Errors Complained of on Appeal (Rule 1925(b) Statement).[2] We held New Flyer could not have filed a more specific Rule

---

[2] Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure provides, in pertinent part:

> If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of errors complained of on appeal ("Statement").

Pa.R.A.P. 1925(b).

1925(b) Statement because the trial court issued only a one-page order denying the Post-Trial Motion, without any explanation of its reasoning, and because the record also did not contain any explanation. *Chin I*, 169 A.3d at 699-700 (citing *Ryan v. Johnson*, 564 A.2d 1237, 1239 (Pa. 1989); *Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 804 (Pa. Super. 2007)). We held our appellate review was hampered by the lack of a trial court opinion discussing the merits of New Flyer's evidentiary weight claim. *Id.* at 700. Accordingly, we vacated the trial court's order finding the issue waived and remanded the matter for the trial court to issue an opinion and order addressing the merits. *Id.*

**Trial Court's Opinion on Remand**

On remand, the trial court explained why its waiver determination was proper and proffered a different reason for finding waiver. (Trial Court Opinion on Remand (Remand Op.) at 1-14.) In its original Rule 1925(a) Opinion, the trial court found New Flyer waived the argument because of a lack of specificity in its Rule 1925(b) Statement. (Trial Court Rule 1925(a) Op. at 4-5.) In its Remand Opinion, the trial court stated that New Flyer waived the weight of the evidence argument by failing to address the issue with any specificity in its Post-Trial Motion or supporting memorandum of law. (Remand Op. at 3-14.)

As instructed, the trial court also addressed the merits of New Flyer's weight of the evidence claim, finding the claim to be without merit. The trial court found New Flyer's strategy of shifting the burden of safe design and operation to SEPTA worked, but only in part, noting the apportionment of liability. According to the trial court:

> [t]he jury . . . refused to permit New Flyer to shift onto SEPTA the responsibility for New Flyer's negligent design and placement of the

6

. . . mirror, New Flyer's lack of investigation when it was informed that the "blind-spot" was causing pedestrian accidents, and New Flyer's failure to warn SEPTA that the placement of the mirror was problematic.

(*Id.* at 16.)

The trial court found that the evidence fully supported the jury's verdict. First, it found ample evidence to support the conclusion that New Flyer placed the mirror at an unusual and unsafe height. (*Id.* at 16-20.) In particular, the trial court cited to the Technical Specifications that required New Flyer to locate the mirrors "to minimize blind spots for the operator." (*Id.* at 17 (quoting Technical Specifications, Reproduced Record (R.R.) at 457a).) According to the trial court, New Flyer took the position that there was no "blind spot" but only a "visual obstruction," and therefore, nothing had to be done to address the situation. (Remand Op. at 18-19.) The trial court further found there was evidence that New Flyer mounted the mirrors five to six inches higher than where it normally mounted mirrors for other customers. (*Id.* at 18 (citing Notes of Testimony (N.T.), December 8, 2015, a.m. session, at 17, R.R. at 245a).) In addition, the trial court cited the testimony of New Flyer's Director of New Product Development, who agreed the mirrors should be placed "as low as possible" to avoid obstruction. (Remand Op. at 18 (quoting N.T., December 10, 2015, p.m. session, at 26-27, R.R. at 372a).) The trial court noted that Chin's expert analyzed the mirror's placement and resulting blind spot in less than an hour, something that New Flyer similarly should have undertaken but did not. (Remand Op. at 18 (citing N.T., December 8, 2015, p.m. session, at 25-26, R.R. at 271a-72a).) In summary, the trial court found it was not against the weight of the evidence for the jury to have concluded:

- New Flyer had a duty to position the roadside mirror at a safe height that minimized blind spots,

7

- New Flyer placed the roadside mirror six inches higher than it normally positioned mirrors,

- New Flyer did nothing to determine what effect that position might have on the driver's view of pedestrians,

- the unusual height created an unsafe blind spot or "visual obstruction" blocking the driver's view of pedestrians like [Chin], and

- New Flyer was negligent in failing to do anything to prevent the "visual obstruction" created by New Flyer's placement of the roadside mirror.

(Remand Op. at 19-20.)

Second, the trial court found "New Flyer abandoned its duty to design and sell a safe bus and made the driver solely responsible to overcome the 'visual obstruction' New Flyer itself created." (*Id.* at 20.) New Flyer placed sole responsibility on the driver of the bus, although its own witness acknowledged "that New Flyer had a general duty to 'make the driver's job as easy as possible' and to 'minimize the [driver's] head or body movement to either look around or over the top'" of the mirror. (*Id.* at 20 (quoting N.T., December 10, 2015, p.m. session, at 34-35, R.R. at 374a).) Meanwhile, the trial court noted Chin's expert testified that driver mistakes happen and even if the driver utilized the rock and roll method, he "might not clear the obstruction every time." (Remand Op. at 20 (citing N.T., December 8, 2015, p.m. session, at 27, R.R. at 272a).) Accordingly, the trial court found "[i]t was not against the weight of the evidence for the jury to determine that New Flyer forsook and breached its duty to design and sell a safe bus, and was negligent in foisting upon the driver the sole responsibility to overcome the unsafe mirror placement chosen by New Flyer." (Remand Op. at 20.)

8

Third and finally, the trial court found "New Flyer was more interested in minimizing its own legal liability instead of minimizing the dangers created by its unsafe placement of the mirror." (*Id.* at 21.) The trial court noted that, in 2006, New Flyer became aware that SEPTA buses were involved in fatal accidents involving pedestrians during left-hand turns. The trial court explained that a labor relations representative for SEPTA asked New Flyer's safety manager to testify about the mirrors at a hearing for a discharged driver who claimed the accident she was involved in was caused by the blind spot resulting from the mirror's placement. New Flyer's safety manager later learned about a second fatal accident involving a similar claim. (*Id.* (citing N.T., December 8, 2015, a.m. session, at 64-67, R.R. at 256a-57a).) According to the trial court, "[t]his information had clear safety implications regarding the placement of the mirrors on the buses New Flyer designed and sold to SEPTA." (Remand Op. at 21.) But, instead of raising those concerns with the safety committee or engineering department, the safety manager emailed New Flyer's in-house counsel, who advised the safety manager to not talk to SEPTA about the mirrors. In-house counsel wrote:

> I'm sufficiently concerned about exposure to New Flyer at this point that I don't think that we should provide any information to SEPTA. Any information that we give them regarding the mirrors would be discoverable by the driver and estates of the victims of the bus accidents. There is no upside to New Flyer in providing any information to [SEPTA] and much liability exposure. In addition, I am concerned that any information we provide which [sic] may be unfavorable to New Flyer.

(*Id.* at 21-22 (quoting Ex. P-8, R.R. at 494a).)[3]  Based on the above, the trial court found "[i]t was not against the weight of the evidence for the jury to determine that New Flyer knew that the placement of the mirror was unsafe and, instead of remedying the danger, only looked to protect itself from liability."  (*Id.* at 22.)

By Order dated November 14, 2017, the trial court denied New Flyer's weight of the evidence claim, and this appeal followed.

## Parties' Arguments

On appeal, New Flyer raises two issues:  (1) whether the trial court erred in again finding New Flyer waived its weight of the evidence challenge; and (2) whether the trial court erred in granting judgment against New Flyer when the verdict was contrary to the weight of the evidence.[4]

With regard to the issue on the merits, New Flyer argues "[t]he overwhelming record evidence unquestionably shows that the jury's finding of liability against New Flyer is contrary to the weight of the evidence."  (New Flyer's Brief (Br.) at 22.)  In particular, it lists 17 reasons the verdict is against the weight of the evidence:

- SEPTA specified the 15" by 8" ROSCO mirror for operator and passenger safety reasons in its detailed contract specifications. (R.[R. at] 230a).

- SEPTA evaluated and approved the placement of the mirror during a 90-day trial period with the pilot bus prior to production. (R.[R. at] 230a).

---

[3] At argument, there were questions related to the admissibility of the emails and whether they were protected by attorney-client privilege.  Following argument, counsel for Chin submitted an unsolicited letter to this Court providing further response to these questions.  New Flyer filed an application seeking leave to respond to Chin's letter.  Because the letter is an improper post-argument submission, we do not consider it.  Accordingly, New Flyer's application is denied as moot.

[4] We have reordered New Flyer's issues for ease of resolution.

10

- SEPTA's engineers evaluated and approved the placement of the mirror during complete pre-delivery inspections of the fleet and, again, after SEPTA took possession of the fleet. (R.[R. at] 231a).

- SEPTA trained its operators on driving techniques to avert any temporary obstruction including avoiding a "fixed stare" into the side view mirror, engaging in active scanning and head-turning, waiting four seconds before initiating a left turn, using the "rock and roll" technique to look around the mirror, and "boxing-off" the left turn. (R.[R. at] 288a, 291a-93a, 297a).

- SEPTA conducted line-of-vision studies in 2004 on the New Flyer bus which revealed a temporary one-second obstruction as may exist in any motorized vehicle. (R.[R. at] 345a).

- SEPTA concluded that its drivers safely avoid the temporary obstruction through SEPTA's prescribed defensive driving techniques. (R.[R. at] 345a-46a).

- SEPTA concluded that there was no engineering flaw in the mirror configuration as a result of the 2004 study. (R.[R. at] 346a).

- SEPTA knew the mirror creates a temporary obstruction but rejected, in 2006, New Flyer's 920 series of buses with the driver side mirror located six inches lower or at 40 inches. (R.[R. at] 231a).

- SEPTA requested that New Flyer *raise* the mirror back to the height of the prior 912 series, or 46 inches, to maintain the consistency of the fleet. (R.[R. at] 359a, 233a-34a).

- SEPTA's Senior Project Designer recognized that the lower mirror made it more difficult for drivers, especially taller drivers, to see the rear of the bus. (R.[R. at] 233a).

- SEPTA conducted an investigation of the similarly-constructed New Flyer hybrid SEPTA buses in August 2012 after which SEPTA concluded that, with proper driving techniques, the driver side mirror does not create a blind spot. (R.[R. at] 347a, 297a).

- SEPTA determined that driver error was the sole cause of the accident. (R.[R. at] 299a, 343a-44a, 349a[,] 502a).

- [Chin]'s experts admitted that the Driver would have seen [Chin] if he had looked over the mirror while scanning the intersection. (R.[R. at] 217a-18a, 273a).

- New Flyer's expert confirmed that driver error caused the accident. (R.[R. at] 385a, 390a).

- SEPTA voiced no complaints about the mirror to New Flyer. (R.[R. at] 231a).

- Prior to [Chin]'s accident in 2012, SEPTA had only informed New Flyer of two prior left turn accidents, which were not definitively attributed to the mirror, since the rollout of the New Flyer buses in 2001. (R.[R. at] 258a).

- SEPTA employs approximately 4,000 bus drivers, SEPTA's drivers make nearly 100,000 left turns per work day, there are approximately 220 work days per year, and, in sum, SEPTA makes 22 million left turns per year by 4[,]000 different drivers. (R.[R. at] 288a, 295a).

(*Id.* at 22-23 (emphasis in original).)

New Flyer argues the trial court erred in a number of regards. First, it contends the trial court erred in concluding the verdict was not against the weight of the evidence because the jury apportioned 25 percent fault to New Flyer. New Flyer argues the issue is whether the jury's finding of liability was against the weight of the evidence, and the apportionment of fault was based on an erroneous finding of liability. Second, New Flyer argues the trial court "erred, as a matter of law, in uncritically deferring to the jury's role of making credibility determinations." (*Id.* at 25.) According to New Flyer, the trial court had the authority and duty "to invade the jury's assessment of credibility when it is unreliable and untrustworthy." (*Id.*) New Flyer does not explain how the jury's credibility assessments were unreliable

12

or untrustworthy.[5] Next, New Flyer takes issue with the trial court's conclusion that the mirror was placed at an unusual and unsafe height. It claims the trial court improperly focused on testimony that the mount was higher on SEPTA buses than buses for other New Flyer customers, while there was evidence that all SEPTA buses had the mirror positioned at the same height, as did buses in New York and Boston. It also notes there was no data to support the trial court's conclusion that these buses were involved in more accidents than buses with lower mounts. New Flyer also disputes the trial court's characterization of the evidence, such as the testimony of New Flyer's safety manager. In addition, it argues that even assuming, *arguendo*, that the height of the mirror was unsafe, it was still unreasonable to find New Flyer negligent because

> it was undisputed that SEPTA knew that New Flyer's use of the contractually-mandated 15" by 8" mirror would necessarily create a temporary visual obstruction for the driver; it was undisputed that SEPTA itself evaluated the bus during a pilot program; it was undisputed that SEPTA trained its drivers to avoid the obstruction; it was undisputed that SEPTA conducted multiple sight-line investigations, and it was undisputed that SEPTA insisted that New Flyer maintain the mirror at the 46-inch height in subsequent lots of buses. It was further undisputed that, during the 11 years before [Chin]'s accident, SEPTA reported to New Flyer only two left-turn accidents, which SEPTA itself did not definitively attribute to the height of the mirror.

---

[5] Later in its brief, New Flyer suggests the jury's findings should not be given much deference because "this was the same jury that incongruously found that New Flyer was negligent for placing the roadside mirror at an unsafe level, but that its product was not defective." (New Flyer's Br. at 29.) In an accompanying footnote, New Flyer discusses its prior attempt to seek judgment n.o.v. or a new trial based on the jury's inconsistent verdict. (*Id.* at 29-30 n.4.) This Court previously found that issue was waived as New Flyer did not object following announcement of the verdict but before the jury was discharged. *Chin I*, 169 A.3d at 697. New Flyer states it is not seeking to relitigate that issue, "but merely cites the inconsistency as cause to question the trial court's unwavering deference to the jury's conclusions." (New Flyer's Br. at 29-30 n.4.)

(*Id.* at 30-31.) It further argues that vehicle manufacturers must rely on drivers exercising due care. New Flyer asserts "it is contrary to the evidence for the jury to have found New Flyer negligent when the purported hazard – the obstruction caused by the mirror – was well-known, accepted, and guarded against by SEPTA," and "[t]o impose liability on New Flyer, under the circumstances, for the Driver's isolated act of negligence, improperly imposes strict liability on New Flyer to guaranty the safety of its product." (*Id.* at 31.)

As to the issue of waiver, New Flyer contends this Court already found the issue was not waived. New Flyer maintains it preserved the weight of the evidence argument in its Post-Trial Motion, supporting brief, and at argument.

Chin counters that the trial court identified three separate bases for finding the verdict was not against the weight of the evidence: (1) New Flyer negligently placed the mirror, which needlessly created a visual obstruction or blind spot; (2) New Flyer negligently shifted all responsibility to the driver to overcome the visual obstruction or blind spot it created; and (3) New Flyer negligently refused to investigate or communicate with SEPTA regarding the mirror when concerns arose. Chin further argues that New Flyer points to evidence of SEPTA's negligence, but this, "in no way detracts from the evidence against New Flyer." (Chin's Br. at 33.) Chin disputed that the trial court mischaracterized testimony, arguing it was accurate. Further, Chin disputes that the trial court could substitute its credibility determinations for those of the jury. In short, Chin argues, New Flyer wants the Court to reweigh the evidence. He points out that the existence of conflicting evidence does not, in itself, make a verdict against the weight of the evidence. Chin contends his negligence claim against New Flyer "involved duties New Flyer owed

14

directly to Mr. Chin as a member of the general public." (Chin's Br. at 42.) Finally, Chin adds that New Flyer waived the weight of the evidence claim.

## Analysis

We begin with the waiver issue. As discussed above, this Court previously found New Flyer did not waive its argument concerning whether the verdict was against the weight of the evidence. *Chin I*, 169 A.3d at 698-99. In reaching this conclusion, we did not agree with the trial court that New Flyer filed a vague, boilerplate Rule 1925(b) Statement, thereby waiving the issue. Upon remand, the trial court now contends it found the issue waived because New Flyer did not develop its argument in its Post-Trial Motion; instead, it merely mentioned in boilerplate fashion that the verdict was against the weight of the evidence. We decline to find waiver on this newly-asserted basis. Rather, based upon the arguments made in its Post-Trial Motion, supporting memorandum of law, and at argument, we find that New Flyer adequately preserved the issue.

Turning to the merits of the claim, "[i]n evaluating a claim that a verdict is against the weight of the evidence, Pennsylvania courts employ a shocks-the-conscience litmus." *Dep't of Gen. Servs. v. U.S. Mineral Prods. Co.*, 956 A.2d 967, 973 (Pa. 2008). That is, a verdict is against the weight of the evidence if it is "so contrary to the evidence that it shocks one's sense of justice." *Criswell v. King*, 834 A.2d 505, 512 (Pa. 2003) (internal quotation and emphasis omitted). A trial court's ability to award a new trial on such grounds is "narrowly circumscribed." *U.S. Mineral*, 956 A.2d at 973. That is because questions of credibility are "exclusively for the factfinder." *Id.* "A jury is entitled to believe all, part, or none of the evidence presented [and] can believe any part of a witness'[s] testimony that they choose, and

may disregard any portion of the testimony that they disbelieve." *Tucker v. Bensalem Twp. Sch. Dist.*, 987 A.2d 198, 205 (Pa. Cmwlth. 2009) (internal quotation omitted). We cannot award a new trial so long as there is evidence to support the jury's finding. *Id.* A mere conflict in evidence is not enough to disturb a verdict. *Irey v. Dep't of Transp.*, 72 A.3d 762, 771 (Pa. Cmwlth. 2013). Finally, we review a trial court's denial of a motion for a new trial on the ground that the verdict was against the weight of the evidence for abuse of discretion. *U.S. Mineral*, 956 A.2d at 973.

New Flyer contends that the verdict here is against the weight of the evidence, pointing to evidence that SEPTA, not New Flyer, was the negligent party. However, after reviewing the record, we agree with the trial court that the jury's verdict is not against the weight of the evidence. The trial court carefully set forth evidence that supports Chin's negligence claim and the jury's verdict against New Flyer. Specifically, the trial court found New Flyer repeatedly claimed that SEPTA mandated where the roadside mirror should be placed, thereby excusing it of liability. Yet, as the trial court noted, the technical specifications were silent on how high the mirrors should be positioned and only required that the mirrors be placed to minimize blind spots. However, there was evidence New Flyer mounted the mirror on SEPTA buses five to six inches higher than for other customers and this created a blind spot/visual obstruction. Although there was evidence that SEPTA educated drivers on how to overcome this visual obstruction, the trial court found there was also evidence that this was not a guaranteed fix. In addition, the trial court found evidence that New Flyer was aware of safety issues related to the mirrors but did nothing. Specifically, the trial court cited the testimony of New Flyer's safety manager, who testified he was contacted by SEPTA representatives in 2006

16

following two fatal pedestrian accidents wherein the union representing the discharged drivers alleged the mirrors were to blame. Despite this knowledge, New Flyer did not investigate, although its in-house and outside counsel acknowledged potential exposure to litigation. This is just some of the evidence that the trial court cited that was sufficient to support the jury's verdict.

We are not dismissive of the evidence that New Flyer points to as evidence it was not negligent. We are cognizant that there is conflicting evidence that, if accepted, would support a finding of no negligence. However, it is not for this Court to make credibility determinations or reweigh the evidence. *U.S. Mineral*, 956 A.2d at 973. Rather, our review is limited to whether the jury's verdict shocks one's sense of justice. *Id.* What New Flyer is really arguing about is how the jury as fact-finder weighed the evidence and found New Flyer liable. Given the evidence presented, we cannot conclude the verdict shocks one's sense of justice. So long as there is evidence to support the jury's verdict, a new trial is not warranted. *Tucker*, 987 A.2d at 205. Here, although there is conflicting evidence to support a verdict in favor of New Flyer, importantly, there is also evidence which supports the jury's verdict against it. Therefore, the trial court did not abuse its discretion in denying the Post-Trial Motion, and the verdict must be upheld. Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven Chin                 :

                    :

         v.               :     No. 1871 C.D. 2017

                    :

New Flyer of America, Inc. and    :

Southeastern Pennsylvania       :

Transportation Authority        :

                    :

Appeal of: New Flyer of America,    :

Inc.                         :

## **O R D E R**

**NOW**, July 16, 2018, the Order of the Court of Common Pleas of Philadelphia County, in the above-captioned matter, is **AFFIRMED.** The post-argument letter received from Appellee's counsel is **STRICKEN,** and Appellant's Application for Leave to Submit Response to same is **DISMISSED AS MOOT.**

 

**RENÉE COHN JUBELIRER,** Judge