IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania      :
     :
v.      :
     :
John M. DeMaske,      :    No. 770 C.D. 2019
     Appellant      :    Submitted: August 19, 2022


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: November 16, 2022


John M. DeMaske (Appellant) appeals from the judgment of sentence entered in the Court of Common Pleas of Greene County (trial court) following his jury trial convictions for six (6) counts of unlawful killing or taking of big game, in violation of the Game and Wildlife Code,[1] 34 Pa.C.S. § 2321(a)(2). This Court previously remanded the matter to the trial court to allow Appellant to file, *nunc pro tunc*, a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) and for the trial court to thereafter issue an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a). *See Com. v. DeMaske* (Pa. Cmwlth., No. 770 C.D. 2019, filed Jan. 4, 2022) (*DeMaske I*). Both Appellant and the trial court complied with these directives on remand, and the

---

[1] 34 Pa.C.S. §§ 101-2965.

matter now returns to this Court for determination.  After careful review, we affirm the judgment of sentence.

## I.  Background and Procedural Posture

In our previous decision, this Court outlined the salient facts and relevant procedural posture underlying this appeal as follows.  *See DeMaske I*, slip op. at 2-5.

> On November 15, 2015, Appellant presented at the home of Lonnie Starcher.[2]  *See* Notes of Testimony, May 31, 2018 (N.T. 5/31/2018) at 51, 75-76, 186.  Appellant had eight deer antler racks in his truck, which he removed and placed in a storage shed on the property owned and used by the DeMaske family.[3]  *See id.* at 76.
>
> > [2] Starcher rents a house on property owned by Appellant's father, Marko DeMaske, with whom Starcher has a good relationship.  *See* Notes of Testimony, May 31, 2018 (N.T. 5/31/2018), at 65, 75, 77 & 80.
> >
> > [3] Starcher explained that he stores some Christmas things and a lawn mower in the shed, but that otherwise the DeMaske family owns the storage shed and accesses it to store things therein at their convenience.  *See* N.T. 5/31/2018 at 80.
>
> On November 20, 2015, the Pennsylvania Game Commission received an anonymous report regarding deer antlers being stored at Starcher's residence.  *See* N.T. 5/31/2018 at 50-51.  As a result, multiple game wardens arrived at the residence on the evening of November 20, 2015, and discovered eight racks of antlers in the storage shed, seven of which appeared fairly fresh with blood and brain matter still attached.[4]  *See id.* at 51-52, 65, 72-73.  The game wardens photographed and seized the antlers. *See id.* at 52.

2

[4] The eighth antler rack appeared to the game wardens to be an old rack. *See* N.T. 5/31/2018 at 52, 69.

On November 21, 2015, multiple game wardens visited Appellant's home, where they encountered Appellant. *See* N.T. 5/31/2018 at 68, 89, 94-95, 99. Appellant gave a statement to the wardens regarding the deer antlers while seated in the passenger's seat of the wardens' vehicle. *See id.* During the interview, Appellant admitted to the game wardens that he had delivered the antlers to the shed at Starcher's. *See* N.T. 5/31/2018 at 89-90. He further admitted that he killed three deer with a crossbow during the hunting season, although he was only supposed to kill one. *See* N.T. 5/31/2018 at 90, 98-99, 178. At trial, Appellant testified that he did not intentionally kill three deer in violation of the rules. *See* N.T. 5/31/2018 at 178. Instead, Appellant explained that he had shot the first deer and tried to track it, without success. *See* N.T. 5/31/2018 at 90-91, 99, 178. Appellant explained that he thereafter shot and killed a second deer, then found the carcass of the first deer before shooting and killing a third deer with the aid of his father, Marko DeMaske.[5] *See* N.T. 5/31/2018 at 90-91, 99-100, 179. Appellant also explained that three of the deer antlers in the shed came from roadkill and another was killed by Kevin Jenkins, another renter.[6] *See* N.T. 5/31/2018 at 90. Appellant also voluntarily showed the game wardens pictures of the deer that were on his phone, which the wardens confiscated. *See* N.T. 5/31/2018 at 93, 103. The game wardens also confiscated Appellant's two crossbows during the interview. *See* N.T. 5/31/2018 at 93-94, 98-99, 110, 177.

[5] Game wardens also charged Marko DeMaske with multiple counts of unlawful killing or taking of big game, but later dropped those charges. *See* N.T. 5/31/2018 at 71, 101.

3

[6] This version comes from the game wardens' – Officers Steve King, Michael Lubic, and Brandon Bo[n]in – testimony as to what Appellant told the authorities. *See* N.T. 5/31/2018 at 49-73, 88-111 & 138-172. On direct examination, Appellant provided a slightly different version of how the seven fresh sets of antlers came to be in the shed: one was his, one was his father's, two were the ones he had injured and that Starcher had retrieved, two were roadkill, and the final one was that of the second renter, Kevin Jenkins. *See* N.T. 5/31/2018 at 183-84.

Regarding licensing, Appellant possessed only one tag to harvest an antlered deer in Pennsylvania during the 2015 hunting season. *See* 5/31/2018 at 141, 148. Appellant did not have a hunting license from West Virginia or Ohio for 2015, and he did not report any harvest in 2015 to the Pennsylvania Game Commission. *See* 5/31/2018 at 141, 153-55.

Following a two-day trial, a jury convicted Appellant of seven counts of unlawful killing or taking of big game.[7] On August 1, 2018, the trial court sentenced Appellant to an aggregate sentence of 5 days to 8 months of incarceration followed by 60 days of probation, together with fines and restitution totaling $3,000 and $4,000, respectively. *See* Trial Court Sentencing Order dated August 1, 2018 at 2-5 (pagination supplied).

[7] Despite the jury's conviction on seven counts of unlawful killing or taking of big game, the verdict was recorded as six counts because Appellant had one antlered deer tag for 2015, although Appellant failed to report any deer harvest to the Pennsylvania Game Commission in 2015.

Appellant filed a timely Notice of Appeal on August 24, 2018.[8] *See* Notice of Appeal filed Aug. 24, 2018. On

August 30, 2018, the trial court directed Appellant to file a Pennsylvania Rule of Appellate Procedure 1925(b) concise statement of errors complained of on appeal within 21 days. *See* Trial Court Order dated Aug. 30, 2018 (Rule 1925(b) Order). On September 10, 2018, in response to Appellant's Motion for Extension to File a Concise Statement filed the same day, the trial court extended Appellant's deadline to file his Rule 1925(b) statement to October 10, 2018.[9] *See* Trial Court Order dated Sept. 10, 2018 (Rule 1925(b) Extension Order); *see also* Motion for Extension to File a Concise Statement filed Sept. 10, 2018 (First Extension Request).

[8] Appellant originally filed this appeal in the Superior Court of Pennsylvania. *See* Notice of Appeal; Superior Court Docket No. 1221 WDA 2018 at 4. The Superior Court transferred the matter to this Court on April 29, 2019, pursuant to Section 762(a)(2)(ii) of the Judicial Code, 42 Pa.C.S. § 762(a)(2)(ii), which confers upon this Court appellate jurisdiction over criminal proceedings for violations of regulatory statutes administered by Commonwealth agencies. *See Dickerson v. Commonwealth*, 87 A.2d 379, 381 (Pa. Cmwlth. 1991).

[9] In his proposed order for the trial court's signature, Appellant requested that the trial court extend the Rule 1925(b) statement filing deadline to "within twenty-one (21) days after the transcript is filed[.]" *See* Rule 1925(b) Extension Order. The trial court, however, struck this suggested temporal language from the order and replaced it with a handwritten notation indicating the Rule 1925(b) statement was due "30 days from this date[,]" which made the deadline for filing a Rule 1925(b) Statement October 10, 2018. *Id.*

On November 1, 2018, after Appellant failed to file a Rule 1925(b) statement by the October 10, 2018 deadline, the trial court issued an order directing that the

5

record of the matter be transferred to the appellate court for review without a Rule 1925(b) statement. *See* Trial Court Order dated Nov. 1, 2018 (Transmittal Order). Thereafter, on November 13, 2018, Appellant filed a Rule 1925(b) statement and his "Motion to Permit Late Filing of Defendant's Concise Statement of Errors Complained of On Appeal" with the trial court. *See* Motion to Permit Late Filing of Defendant's Concise Statement of Errors Complained of On Appeal filed Nov. 13, 2018 (Second Extension Request); *see also* Concise Statement of Errors Complained of On Appeal filed Nov. 13, 2018. In an order dated November 16, 2018, the trial court acknowledged these filings only to the extent that it directed the Greene County Clerk of Courts to forward copies of the filed Rule 1925(b) statement and the November 16, 2018 order to the appellate court for its consideration. *See* Trial Court Order filed Nov. 16, 2018 (Second Transmittal Order).

*DeMaske I*, slip op. at 2-5.

On appeal, this Court determined that Appellant waived all his issues on appeal by failing to timely file an ordered Rule 1925(b) statement. *See DeMaske I*, slip op. at 9-10. Because this failure represented *per se* ineffectiveness of counsel, however, on January 4, 2022, we remanded the matter to the trial court to allow the *nunc pro tunc* filing of a Rule 1925(b) statement by Appellant and the preparation of a Rule 1925(a) opinion by the trial court. *See id.* Appellant filed his Rule 1925(b) statement on January 18, 2022, and the trial court accepted the filing and issued a "Statement Pursuant to Pa. R.A.P. 1925" (Trial Court Opinion) thereafter. The matter is now ripe for determination on the merits.

## II. Issues

Appellant raises the following issues for our review:

1. Did the [trial c]ourt permit Deputy Game Warden Bonin and Deputy Game Warden King to give expert testimony

6

without these witnesses being qualified as an expert [sic] or being required to provide expert reports to the defense?

2. Did the [trial c]ourt err in treating each set of deer antlers which [Appellant] transported to [] Starcher's residence as a separate criminal offense?

3. Was [Appellant] unduly prejudiced by the prosecution e-mailing discovery to defense counsel months after it was due and days before the trial?

4. Did the [trial c]ourt err in failing to [grant] a Motion to Dismiss all but three [c]ounts of unlawfully possessing or killing deer at the conclusion of the Commonwealth's case in chief? Did the Commonwealth fail to establish a prima facie case?

5. Did the [trial c]ourt err in not entering a directed verdict for [Appellant] at the conclusion of all the evidence as the Commonwealth proved only that [Appellant] killed three deer and he had a lawful tag for one deer?

6. Did the Commonwealth's evidence fail to prove that [Appellant] knew that all seven sets of deer antlers in his possession were illegally obtained or killed by other people?

7. Did the Commonwealth fail to provide notes taken by Deputy Game Warden Lubic which were transcribed at the time [Appellant] was being questioned by police?

Appellant's Br. at 3-4.[2]

---

[2] We note that, in response to this Court's August 4, 2022 order regarding supplemental briefing following remand, Appellant's counsel informed the Court that Appellant intended to rely on his previously filed brief and thus would submit no further briefing in this matter. *See* Commonwealth Court Order dated Aug. 4, 2022; *see also* Letter of Neil J. Marcus dated Aug. 9, 2022.

## III. Discussion

### A. *The testimony of the Deputy Game Wardens*

First, Appellant claims that the trial court erred by letting the game wardens testify as to their observations about the deer antlers confiscated. *See* Appellant's Br. at 10-11. Appellant alleges that this testimony amounted to improper expert testimony. *See id.* He is incorrect.

Initially, we observe that "[t]he admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." *Com. v. Woodard*, 129 A.3d 480, 494 (Pa. 2015) (quoting *Com. v. Reid*, 99 A.3d 470, 493 (Pa. 2014)). Further, a trial court may accept the opinion of an expert where "the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;" or where "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Pa.R.E. 702. "[E]xpert testimony must be based on more than mere personal belief, and must be supported by reference to facts, testimony or empirical data." *Nobles v. Staples, Inc.*, 150 A.3d 110, 114 (Pa. Super. 2016) (quoting *Snizavich v. Rohm & Haas Co.*, 83 A.3d 191, 195 (Pa. Super. 2013)) (internal quotation marks omitted). Otherwise stated, "expert testimony reflects the application of expertise and does not stray into matters of common knowledge." *Com. v. Manivannan*, 186 A.3d 472, 485 (Pa. Super. 2018) (internal quotation marks and brackets omitted).

In the instant matter, Deputy Game Warden King and Deputy Game Warden Bonin testified simply to their own personal observations regarding the antler racks seized from the storage shed. *See* N.T. 5/31/2018 at 52, 69, 72-73.

8

Deputy Game Warden King testified that seven of the antler racks "seemed to be really fresh, they still had brain matter in them and blood on them." N.T. 5/31/2018 at 52. He further observed that "[o]ne of them was an old one." *Id.* These are not specialized observations beyond the ken of the average layperson, but instead are simple personal observations and descriptions of things within the witnesses' sight. As such, this is not testimony that requires qualification as an expert. *See Nobles.* Further, the same is true of the Deputy Game Wardens' testimony regarding the photographs of the deer antlers. *See* N.T. 5/31/2018 at 53, 58-59, 120, 141-44. We find no error or abuse of discretion in the trial court allowing this testimony into evidence.

**B.** *Individual antler racks as separate criminal counts*

Second, Appellant argues that the trial court erred by treating each set of deer antlers transported to and confiscated from Starcher's residence as a separate criminal offense. *See* Appellant's Br. at 11-12. Appellant is not entitled to relief on this claim.

The Game and Wildlife Code grades counts of unlawful killing or taking of big game as follows:

> (2)(i) A violation of subsection (a)(1) or (2) where the species is a single white-tailed deer or a single wild turkey is a summary offense of the first degree and may result in forfeiture of the privilege to hunt or take wildlife anywhere within this Commonwealth for a period of three years. A second violation of subsection (a)(1) or (2) where the species is a single white-tailed deer or a single wild turkey within a seven-year period is a misdemeanor and may result in forfeiture of the privilege to hunt or take wildlife anywhere within this Commonwealth for a period of five years. A third offense within a seven-year period where the species is a single white-tailed deer or a single wild

9

turkey is a misdemeanor of the first degree and may result in the forfeiture of the privilege to hunt or take wildlife anywhere within this Commonwealth for a period of ten years.

(ii)(A) A second violation of subsection (a)(1) or (2) during the same criminal episode where the species taken, injured, killed, possessed or transported is white-tailed deer or wild turkey is a misdemeanor and may result in forfeiture of the privilege to hunt or take wildlife anywhere within this Commonwealth for a period of five years.

(B) A third or fourth violation of subsection (a)(1) or (2) during the same criminal episode where the species is white-tailed deer or wild turkey is a misdemeanor of the first degree and may result in forfeiture of the privilege to hunt or take wildlife anywhere within this Commonwealth for a period of ten years.

(C) A fifth or subsequent violation of subsection (a)(1) or (2) during the same criminal episode where the species is white-tailed deer or wild turkey is a felony of the third degree and may result in forfeiture of the privilege to hunt or take wildlife anywhere within this Commonwealth for a period of 15 years.

34 Pa.C.S. § 2321(d)(2). Pursuant to this offense grading scheme, the six (6) counts for which Appellant was found guilty included one summary offense, one ungraded misdemeanor, two misdemeanors of the first degree, and two felonies of the third degree. *See* Trial Court Docket CP-30-CR-0000274-2017 at 4.

The testimony of multiple witnesses in this matter, Appellant included, revealed that Appellant stored eight sets of antlers – seven fairly fresh sets and one old set – in the storage shed. Each antler rack – the fresh ones with the brain matter and blood still on them, at least – represented the killing and/or taking of a separate deer. It was within the Commonwealth's purview to treat each as a separate offense

10

under the Game and Wildlife Code and prosecute Appellant for each as an individual charge, which the Commonwealth accordingly did. *See* 34 Pa.C.S. § 2321(d)(2); *see also Com. v. Brown*, 708 A.2d 81, 84 (Pa. 1998) (noting that the Commonwealth retains general and widely recognized discretion regarding the prosecution of criminal matters).

To the extent Appellant criticizes the Commonwealth's decision to prosecute him "for seven counts of violating the Big Game law for the short time deer antlers were in his possession" as "draconian," this argument affords him no relief. Appellant's Br. at 11. The fact that Appellant possessed the antlers only during the time it took to transport and store them at the storage shed in no way lessens his possession thereof – the Game and Wildlife Code contains no minimum temporal requirement for unlawful possession of big game remains before an individual may be guilty of unlawful killing or taking of such game. *See* 34 Pa.C.S. § 2321(a)(2). Further, Appellant's rhetorical observation that the authorities did not charge Starcher with unlawful killing or taking of big game despite the deer antlers being recovered in Starcher's possession is likewise immaterial to whether Appellant himself was properly charged with seven counts of unlawful killing or taking of big game. *See* Appellant's Br. at 11-12; *see also Brown*. Appellant is not entitled to relief on his second claim.

## C. *Pre-trial discovery production*

Next, Appellant asserts that the trial court erred in admitting evidence where the Commonwealth did not respond to Appellant's discovery requests within 30 days of the service of the motion for discovery. *See* Appellant's Br. at 12. In this cursory argument, Appellant fails to identify with any specificity the discovery at issue and/or the pertinent evidence admitted at trial. *See id.* Instead, he merely states

11

that "[t]he prosecution dumped numerous emails and information upon [Appellant] in the two (2) weeks before the case was called for trial." *Id.* Without further specificity or development of any kind, Appellant concludes "[t]his was unduly prejudicial to [him]," and therefore "[e]vidence which the prosecution wished to present should have been barred by the [trial c]ourt." *Id.* Because he failed to meaningfully develop this issue in his brief, Appellant has waived this argument.[3] *Com. v. Spotz*, 18 A.3d 244 (Pa. 2011) (claim unreviewable and waived for lack of development where appellant did not develop the claim factually or legally and did not support it with citations, and the court could not discern what error allegedly occurred).

### D. *Motion to dismiss*

Appellant next claims that the trial court erred by failing to grant a motion to dismiss on all but three counts of unlawful killing or taking of big game because the evidence established only that Appellant had killed three deer. *See* Appellant's Br. at 12-13. This claim is effectively a sufficiency of the evidence claim that entitles Appellant to no relief.

When examining a challenge to the sufficiency of evidence of a criminal conviction, an appellate Court's standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence

---

[3] Even in the absence of a response within 30 days to a discovery request, we do not agree with Appellant's conclusory statement that "[t]he defense had the right to assume the Commonwealth could not or would not seek to prove that the deer antlers came from deer harvested in Pennsylvania." Appellant's Br. at 12.

12

and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Com. v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014).

Here, the Commonwealth's evidence that Appellant possessed seven deer included photographs and testimony regarding seven "fairly fresh" deer racks still with blood and brain matter on them that Appellant transported to and placed inside the storage shed at Starcher's property. The evidence further illustrated that Appellant had but one antlered deer tag for the 2015 season and that none of the other individuals to whom Appellant attributed the deer racks had reported an antlered deer harvest in 2015. Finally, Appellant admitted taking a photograph recovered on his phone that depicted seven deer heads in a field. *See* N.T. 5/31/2018 at 183. This evidence constituted *prima facie* proof of seven counts of unlawful killing or taking of big game sufficient to send the charges to the jury and deny any motion to dismiss or for directed verdict at the conclusion of the Commonwealth's case in chief. Accordingly, Appellant is not entitled to relief on his fourth claim.

13

### E. *Motion for a directed verdict*

In his fifth claim, Appellant alleges the trial court erred by failing to enter a directed verdict in his favor. *See* Appellant's Br. at 13-14. A directed verdict should be granted if "the prosecution's evidence, and all inferences arising therefrom, considered in the light most favorable to the prosecution, are insufficient to prove beyond a reasonable doubt that the accused is guilty of the crimes charged." *Com. v. Potts*, 460 A.2d 1127, 1138 (Pa. Super. 1983). This claim fails for the reasons articulated above in reference to the motion to dismiss.

### F. *Sufficiency of the evidence regarding Appellant's knowledge that the deer racks were illegally harvested*

In his sixth claim, Appellant claims the Commonwealth failed to adduce evidence sufficient to prove that Appellant knew that the seven racks of deer antlers were illegally harvested. *See* Appellant's Br. at 14-15. As with the previous two claims, this is a sufficiency of the evidence claim. It likewise fails.

Like all elements of crimes, "intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." *Com. v. Franklin*, 69 A.3d 719, 723 (Pa. Super. 2013). Further,

> [w]e note that credibility determinations are within the sole province of the jury. A jury is entitled to believe all, part, or none of the evidence presented [and] can believe any part of a witness' testimony that they choose, and may disregard any portion of the testimony that they disbelieve. Our court will not award a new trial if there is evidence supporting the jury's finding.

*Tucker v. Bensalem Twp. Sch. Dist.*, 987 A.2d 198, 205 (Pa. Cmwlth. 2009) (internal citations, quotation marks, and brackets omitted).

14

In this matter, the evidence clearly showed that Appellant had seven sets of antlers in his possession. As the trial court noted, "[w]hether [Appellant] had actual knowledge that all seven deer antlers in his possession were illegally obtained or killed by other people was a question for the jury[.]" Trial Court Opinion at 6-7. The jury heard Appellant's testimony that he did not intentionally kill deer in violation of the rules; that he had been unable to track certain deer he shot that were later located and that the remaining deer were either killed by another individual or were roadkill. The jury in its capacity as finder of fact disregarded this testimony and convicted Appellant as discussed above. As discussed, *supra*, our review of the record confirms that the Commonwealth put forth evidence from which a jury could, and did, attribute to Appellant knowledge of the illegal harvesting of the deer antlers he possessed. Appellant is accordingly not entitled to relief on this claim. *See Tucker*.

## G. *Deputy Game Warden Lubic's notes*

In his final issue, Appellant alleges he was prejudiced by a discovery violation because Deputy Game Warden Lubic made reference on direct examination to notes made during his November 21, 2015 interview with Appellant that had not been produced in discovery. *See* Appellant's Br. at 15-16. Appellant alleges that had such notes been turned over, his counsel could have more effectively cross-examined the witness and prepared Appellant for his own direct testimony. *See id.* at 17. While not previously produced, the notebook in question was produced during Deputy Game Warden Lubic's cross-examination and Lubic explained that it contained a summary of the events of November 20-21, 2015. *See* N.T. 5/31/2015 at 96-97. The notebook did not contain notes on Appellant's statement regarding where he shot the deer; in fact, the only information regarding the notebook revealed

15

at trial was (a) the notebook's existence, and (b) the fact that the notebook did *not* contain information or notes about what Appellant said during the interview on November 21, 2015. As such, Appellant cannot prove prejudice from the failure of the Commonwealth to have previously produced this notebook, and Appellant is not entitled to relief on his final claim. *Com. v. Johnson,* 727 A.2d 1089, 1097 (Pa. 1999) ("a defendant seeking relief from a discovery violation must demonstrate prejudice").

## IV. Conclusion

For the reasons stated herein, we affirm the judgment of sentence.

_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | |
| | : | |
| John M. DeMaske, | : | No. 770 C.D. 2019 |
| Appellant | : | |

## O R D E R

AND NOW, this 16th day of November, 2022, the judgment of sentence entered by the Court of Common Pleas of Greene County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge